**GENERAL MOTORS CORPORATION,**
**Relator,**

v.

**The Honorable Joe B. EVINS, Judge of the 206th Judicial District Court of Hidalgo County, Texas, Respondent.**

**No. 13–92–239–CV.**

Court of Appeals of Texas,
Corpus Christi.

June 10, 1992.

Rehearing Overruled July 30, 1992.

Ramon Garcia, Edinburg, Gayle Caldarola, San Antonio, Juan Molina, Weslaco, Lucy G. Canales, Calame, Linebarger & Graham, Edinburg, John Trigg, Parcel, Mauro, Hultin & Spaanstra, Denver, Colo., Kenneth Fuller, Fuller & Fuller, San Antonio, Roel Flores, McAllen, for parties at interest.

Jose E. Garcia, Garcia & Ramirez, McAllen, Thomas H. Crofts, Jr., Sharon E. Callaway, Wallace B. Jefferson, Crofts, Callaway & Jefferson, Ray A. Weed, Ball & Weed, San Antonio, for relator.

Joe B. Evins, Edinburg, Gary L. Bledsoe, Asst. Atty. Gen., Austin, for respondent.

Before NYE, C.J., and DORSEY and GILBERTO HINOJOSA, JJ.

## OPINION

DORSEY, Justice.

In this original proceeding, relator, General Motors (GM) complains that the Honorable Joe B. Evins has abused his discretion in either failing to recuse himself from further proceedings in the underlying suit or to refer GM's motion to recuse to the presiding judge of the administrative district in accordance with Tex.R.Civ.P. 18a. We believe that the mandamus action is premature because relator has presented us with a record which shows neither a clear abuse of discretion nor the failure to perform a ministerial act. We deny the writ of mandamus with instructions.

The plaintiffs in the underlying lawsuit sued GM for injuries allegedly suffered when a GM automobile, which they claim was in "park," moved rearward because the transmission shifted into reverse unassisted. Prior to trial, GM filed a motion to recuse Judge Evins.[1] The recusal motion alleged that Judge Evins' impartiality was in serious question because the plaintiff's attorney, Ramon Garcia, and the trial judge had an ongoing attorney-client relationship. GM also asserted that the trial judge and Garcia had formerly been associated in the practice of law.

Judge Evins neither recused himself nor referred the case to the presiding judge of the administrative district. The case was tried on the merits, resulting in a jury verdict in GM's favor. No motion for judg-

1. The timeliness of the first motion to recuse was hotly disputed. We believe that the timeli- ness of the first motion is irrelevant to any disposition we make.

ment or judgment have been presented to the court in the case to date.[2]

After the verdict was announced by the jury, GM again sought to recuse Judge Evins from hearing any post-verdict motions in the case. This motion was filed on March 4, 1992. The second recusal motion reiterated as grounds the existence of the attorney-client relationship and the former association of Garcia and the judge. The motion stated as an additional ground an allegation that Judge Evins had not filed or made public the jury verdict even though two months had elapsed since the verdict. GM alleged also that Judge Evins had refused to permit GM's counsel to view the verdict. GM also raised additional claims which it alleges are proof that Judge Evins was not impartial in the handling of the case, including: insinuations by the judge that GM's counsel had acted dishonorably, partiality in evidentiary rulings and overall partiality in his post-trial dealings with GM.

After the recusal motion was filed, the plaintiffs filed a motion for mistrial. On April 17, 1992, GM notified the trial court that it had not received word on what action the trial court intended to take on the recusal motion. Judge Mancias signed an order setting both the motion to recuse and the motion for mistrial for April 30, 1992, in the 206th District Court.[3] This hearing never took place because, in the interim, we granted GM's motion for leave to file petition of writ of mandamus and request for a temporary stay.

Tex.R.Civ.P. 18a provides:

(a) At least ten days before the date set for trial or other hearing ... any party may file with the clerk of the court a motion stating grounds why the judge before whom the case is pending should not sit in the case....

(c) Prior to any further proceedings in the case, the judge shall either recuse himself or request the presiding judge of the administrative judicial district to assign a judge to hear such motion. If a judge decides to recuse himself, he shall enter an order of recusal and request the presiding judge of the administrative judicial district to assign another judge to sit, and shall make no further orders and shall take no further action in the case except for good cause stated in the order in which such action is taken.

d) If the judge declines to recuse himself, he shall forward to the presiding judge of the administrative judicial district—an order of referral, the motion, and all opposing and concurring statements.

■ We agree with GM that a trial judge, when presented with a proper recusal motion, has the option of either recusing himself or referring the case to the administrative judge. *Greenberg, Benson, Fisk & Fielder v. Howell*, 685 S.W.2d 694, 695 (Tex.App.—Dallas 1984, orig. proceeding). The cases vary concerning whether a trial court may make the initial procedural inquiries concerning such matters as timeliness of the motion or sufficiency of the grounds for disqualification, etc.[4] We need not reach that issue in order to dispose of the case before us.

■ Mandamus may issue only to correct a clear abuse of discretion or a trial court's failure to perform a ministerial duty. *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917–18 (Tex.1985).

---

**2.** GM candidly admits that it has not moved for judgment because it fears Judge Evins will grant either a mistrial or a new trial in the case. The trial court has great discretion with respect to granting both mistrials and new trials.

**3.** Judge Evins is the presiding judge of this court.

**4.** Procedural requirements are mandatory and a party who fails to comply with Rule 18a waives the right to complain of a judge's failure to recuse himself. *Vickery v. Texas Carpet Co.*, 792 S.W.2d 759 (Tex.App.—Houston [14th Dist.] 1990, writ denied). The provisions of Rule 18a

requiring a trial judge to either recuse himself or refer the motion never come in to play if the motion to recuse is not timely. *Watkins v. Pearson*, 795 S.W.2d 257 (Tex.App.—Houston [14th Dist.] 1990, writ denied). A trial judge, when presented with a recusal motion, regardless of the procedural sufficiency of that motion, has the option to act in one of two specified ways: to recuse himself or to refer the case to the presiding judge. *Lamberti v. Tschoepe*, 776 S.W.2d 651 (Tex.App.—Dallas 1989, writ denied).

In a sense, the limited discretion allowed a trial judge in a recusal case is nearly ministerial in nature.

Our review of the record here shows that a motion to recuse was filed after verdict but before judgment. The trial judge has not recused himself, referred the case, or refused to rule. Although the trial court has not acted promptly on the recusal motion, we find that not so much time has passed that he has clearly refused to act. Further, the record does reflect that the court set a hearing on the recusal motion. We believe that when a trial judge is faced with a recusal motion, he may hold a hearing to determine if he will recuse himself from the case or refer the case to the administrative judge and enter an order. *See Crawford v. State*, 807 S.W.2d 597 (Tex.App.— Dallas 1991, no pet.). We prematurely granted leave before the hearing scheduled for April 30, 1992. We note that there was also a setting on the same date to determine plaintiffs' motion for a mistrial. It clearly would have been improper for the trial court to have considered any other motion before it until the recusal motion was resolved.

We understand that filing recusal motions at a time other than prior to a trial is fraught with problems. However, the rule allows for sanctions if the presiding judge determines that the motion was sought for purposes of delay or without just cause. Tex.R.Civ.P. 18a(h). The purpose of the rule is to insure that all litigants may know that they have received a fair trial because the judge who presides over their case is impartial. The safeguards of the rule surely outweigh any delay tactic problems the rule may create.

In sum, we hold that the trial court did not clearly abuse his discretion. He should be given the opportunity to determine if he chooses to recuse himself or to refer the case to the administrative judge. If at the initial hearing, the trial court refuses to comply with Rule 18a, GM may then seek relief before this Court. At this point, the relief GM seeks is premature.

We deny the petition for writ of mandamus.

NYE, Chief Justice, dissenting.

In this original proceeding, relator, General Motors Corporation, a defendant in the underlying suit, seeks the issuance of a writ of mandamus, compelling the Hon. Joe B. Evins to either recuse himself from post-trial proceedings in the underlying suit, or to request the Presiding Judge of the Administrative District to assign a judge to hear its Motion to Recuse Judge Evins. I would conditionally grant the Petition for Writ of Mandamus.

This Petition for Writ of Mandamus stems from a wrongful death and survival action filed in Judge Evins' 206th District Court. The Plaintiffs in the underlying suit alleged that about January 20, 1990, Ausencio Perez was trying to clean the windshield of a 1984 Chevrolet Monte Carlo. At that time, the Monte Carlo was stopped with the engine running. Suddenly, the car shifted unassisted into reverse and began moving backward. Mr. Perez tried to stop the car, but he was knocked down and injured. Juan Ramon Zavala tried to assist Mr. Perez, but Mr. Zavala was struck and killed by the vehicle. The Plaintiffs sued GM, the Monte Carlo's manufacturer, and Simpson Auto Sales, the dealership which sold the Monte Carlo, alleging strict liability, breach of warranty, negligence, and gross negligence in the design, manufacture, marketing, and sale of the Monte Carlo.

Before trial of the case, GM filed its "MOTION FOR RECUSAL AND/OR DISQUALIFICATION," requesting that Judge Evins not sit in the case. GM alleged an existing attorney-client relationship between the Plaintiffs' attorney-in-charge, Ramon Garcia, and Judge Evins. GM also alleged that Ramon Garcia and Judge Evins were associated in the practice of law from 1972 to 1973. Judge Evins neither recused himself nor referred the case to the Presiding Judge of the Administrative District.

After a trial on the merits, the case was submitted to the jury on special questions.

On December 17, 1991, the jury returned its verdict. In response to the liability questions, the jury found that Ausencio Perez (90%) and Juan Ramon Zavala (10%) were the only parties whose negligence proximately caused the occurrence.

GM now alleges that after receipt of the jury's verdict, Judge Evins took custody of the verdict form. Without having the verdict filed, Judge Evins has continued to maintain exclusive possession of the verdict subsequent to its rendition. GM, through its attorney, Jose E. Garcia, had repeatedly sought to obtain a copy of the verdict from Judge Evins. However, all requests have

been denied.[1] According to GM, the verdict form has not been filed in the court records.

On March 4, 1992, GM filed its "DEFENDANT'S MOTION TO RECUSE JUDGE JOE B. EVINS FROM POST–TRIAL PROCEEDINGS." GM based its post-trial recusal motion on three bases: an existing attorney-client relationship between the Plaintiffs' primary attorney, Ramon Garcia, and Judge Evins;[2] Judge Evins' impounding of the official jury verdict; and Judge Evins' conduct concerning the suit.[3] GM requested that Judge Evins not sit in the remaining stages of the litigation.

---

1. On May 12, 1992, GM's attorney, Jose E. Garcia, gave a sworn affidavit in which he stated, in relevant part:

 "The following indicates dates in which I personally made contact with the Court Coordinator or Court Staff and/or District Clerk in order to obtain a file stamped copy of the Court Charge/Jury Verdict with regard to the ... [underlying suit:]

 December 17, 1991 Conference with J.J. Gonzalez, Deputy Clerk regarding Court Charge, Conference with the 206th Court Staff serving certified copy of jury verdict.

 December 19, 1991 Travel to Courthouse; Conference with Deputy District Clerk, to secure certified copy of jury verdict.

 December 20, 1991 Telephone Conference with Court Clerk requesting copy of jury verdict.

 December 23, 1991 Telephone Conferences with 206th Court Clerk and District Clerk regarding Court Charge.

 January 2, 1992 Telephone Conferences with Court Coordinator regarding Court Charge.

 January 13, 1992 Telephone Conference with Court Clerk regarding Court Charge.

 January 14, 1992 Telephone Conferences with Court Clerk and District Clerk.

 February 19, 1992 Conference with 206th Court Staff requesting copy of jury verdict.

 March 5, 1992 Telephone conference with Court Clerk, office conference with Lyn Flanagan and Mark Kvapil, Court Reporter regarding transcripts and Court Charge/Jury Verdict.

 "On each and every occasion listed above, I attempted to locate and serve a copy of the jury verdict. I was informed that the District Clerk did not have the Court's Charge in the District Clerk's Office and the Court Staff would advise that they had to check with the Judge [Evins]. When I spoke with Aurora Salinas, Coordinator of the 206th, she stated the Judge had the Court's charge in his office and she would have to get with him and she would let me know. This was the case as late as February 19, 1992 when Ray Weed and I were both there in the

 Court Staff's Office. On December 18, 1991, after the Deputy District Clerk was not able to produce a copy of the Court Charge, I approached Aurora Salinas, Court Coordinator of the 206th and specifically requested a certified copy of the Court Charge and the Honorable Judge Joe E. Evins [sic] overheard my request and stated no one would get a copy of the Court Charge, that it would remain in his office under lock and key...."

2. GM's motion to recuse stated, in relevant part:

 The law office of plaintiffs' designated attorney in charge, Ramon Garcia, represents Judge Evins in a lawsuit in the 332nd Judicial District Court of Hidalgo County, Texas, to-wit: Cause No. C–1344–89–F, *Joe B. Evins and wife, Lila Evins v. Robert L. Rogers, The Security State Bank of Pearsall, A.R. Galloway and Mike Wilson.* Moreover, Judge Evins and plaintiffs' attorney practiced law together in 1972 and 1973. As a result of the relationship between Judge Evins and plaintiffs' attorney, Judge Evins' impartiality in the post-trial stages of this litigation might reasonably be questioned. *See Potashnick v. Port City Construction Co.,* 609 F.2d 1101 (5th Cir.1980).

3. GM alleged that Judge Evins refused for an inordinate time to rule on its Motion to Transfer. He retained jurisdiction despite clear precedent to the contrary. When trial began, he overruled GM's challenges for cause of potential jurors who said they had experiences similar to that alleged by the Plaintiffs. He overruled another challenge for cause after a juror admitted to being previously represented by Ramon Garcia. On the other hand, Judge Evins struck five jurors for cause because they said that they were familiar with the "lawsuit abuse" program in Hidalgo County, even though none of them felt that it would affect them in being a fair and impartial juror.

 Judge Evins wrongly insinuated that GM's counsel had intentionally disobeyed rulings and intimated that GM's counsel was dishonorable.

On March 30, 1992, Ramon Garcia filed his "NOTICE OF WITHDRAWAL OF COUNSEL" in which he gave notice that Gayle Caldorola would be the Plaintiffs' new counsel. That same day, Gayle Caldorola filed a Response to the Motion to Recuse and a Motion for Mistrial. On April 22, 1992, the Hon. Fernando Mancias, Judge of the 93rd District Court of Hidalgo County (Judge Mancias is not the Presiding Judge of the Administrative District), signed an Order setting an April 30, 1992, hearing date on the Motion to Recuse and on the Motion for Mistrial in the 206th District Court. That hearing did not occur because this Court granted GM's "MOTION FOR LEAVE TO FILE PETITION FOR WRIT OF MANDAMUS AND REQUEST FOR TEMPORARY RELIEF." No motion for judgment or judgment have been presented to the court in the case to date.[4]

The Texas Rules of Civil Procedure are explicit with regard to motions to recuse. Rule 18a provides (emphasis added):

(a) At least ten days before the date set for trial or other hearing ... any party may file with the clerk of the court a motion stating grounds why the judge before whom the case is pending should not sit in the case ...

. . . . .

(c) *Prior to any further proceedings in the case, the judge shall either recuse himself or request the presiding judge of the administrative judicial district to assign a judge to hear such motion.* If the judge recuses himself, he shall enter an order of recusal and request the presiding judge of the administrative judicial district to assign another judge to sit, and shall make no further orders and shall take no further action in the case except for good cause stated in the order in which such action is taken.

d) If the judge declines to recuse himself, he shall forward to the presiding judge of the administrative judicial district ... an order of referral, the motion, and all opposing and concurring statements....

Rule 18b provides, in relevant part:

. . . . .

As a result, GM's attorney, Ray Weed, had to give sworn testimony outside the jury's presence, establishing his good standing and veracity. During trial, Judge Evins attempted to intimidate GM's attorneys by raising his voice in a threatening manner and by making angry gestures.

Judge Evins also showed partiality in his rulings on evidence. He admitted documents pertaining to clearly dissimilar other incidents, effectively accepting the Plaintiffs' offerings, unless the defendants established that they were inadmissible. He struck the testimony of one of GM's experts, until opposing counsel waived objection, on the frivolous ground that he had read a portion of one of the Plaintiffs' expert's testimony. Judge Evins continued to pursue the matter in an attempt to find a reason to strike all of the defendants' experts' testimony.

On the second day of jury deliberations, the Plaintiffs' attorney revealed that Plaintiffs' Exhibit 23 had been sent to the jury room even though it had not been admitted into evidence. While court was in recess for GM's counsel to evaluate the situation, the jury sent out a note saying that it had reached a verdict. The court again took up the matter of PX 23. When GM's attorney announced that it would not be moving for a mistrial, the Plaintiffs' attorney asked for time to confer with GM's attorney, and, when granted, suddenly brought up the subject of settlement. The Plaintiffs' counsel then moved for a mistrial based on the exhibit irregularity, even though the exhibit could have prejudiced only GM. When GM waived any complaint about PX 23, the mistrial was denied. Thereafter, Judge Evins granted the Plaintiffs' motion for non-suit, long after the time when the non-suit option became unavailable. After vacating the non-suit, Judge Evins allowed the Plaintiffs' counsel more time to discuss settlement. GM made an offer that the Plaintiffs' lead counsel accepted. When Judge Evins sought confirmation from each plaintiff, one of the plaintiffs stated that she would rather "go with the verdict" and refused the settlement. Judge Evins questioned her, her sister, and her father about their understanding of the consequences of a zero verdict, stating "There will be no money paid whatever the verdict is" and "if that jury brings in zero you got nobody to blame but yourself and that's the way it is and everybody rides on it." Stating "I don't want no lawsuits later on involving this Court as coerced (sic) somebody into accepting a settlement," Judge Evins finally called for the jury. After receiving the verdict, reading it aloud, and discharging the jury, he took custody of the verdict form.

**4.** GM admits that it has not moved for judgment because it fears that Judge Evins will grant either a mistrial or a new trial in the case. The trial court has great discretion with respect to granting both mistrials and new trials.

**(2) Recusal**

A judge shall recuse himself in any proceeding in which:

(a) his impartiality might reasonably be questioned;

. . . . .

(4) In this rule:

(a) "proceeding" includes pretrial, trial, or other stages of litigation;

Rule 18a(c) is mandatory. *McLeod v. Harris,* 582 S.W.2d 772, 774 (Tex.1979) (orig. proceeding); *Lamberti v. Tschoepe,* 776 S.W.2d 651, 652 (Tex.App.—Dallas 1989, writ denied); *Petitt v. Laware,* 715 S.W.2d 688, 692 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.); *Greenberg, Benson, Fisk & Fielder, P.C. v. Howell,* 685 S.W.2d 694, 695 (Tex.App.—Dallas 1984, no writ) (orig. proceeding); *Gonzalez v. Gonzalez,* 659 S.W.2d 900, 901 (Tex. App.—El Paso 1983, no writ). A trial judge, when presented with a recusal motion, regardless of the "procedural sufficiency" of that motion, has only two options, *i.e.,* to recuse himself, or refer the case to the Presiding Judge of the Administrative District. *Lamberti,* 776 S.W.2d at 652; *Greenberg,* 685 S.W.2d at 695; TEX. R.CIV.P. 18a(c).[5]

Mandamus may issue only to correct a clear abuse of discretion or in a trial court's failure to perform a ministerial duty. *Johnson v. Fourth Court of Appeals,* 700 S.W.2d 916, 917–18 (Tex.1985). Although appellate courts lack power to compel a trial judge to do a particular act involving or requiring discretion on his or her part, appellate courts do have power to order a trial judge to exercise discretion in some manner. *Greenberg,* 685 S.W.2d at 694–695; *Boswell, O'Toole, Davis & Pickering v. Stewart,* 531 S.W.2d 380, 382 (Tex.

Civ.App.—Houston [14th Dist.] 1975, no writ); *Jones v. Smith,* 470 S.W.2d 305, 307 (Tex.Civ.App.—Houston [1st Dist.] 1971, no writ).

In the instant case, Judge Evins has not recused himself or referred the case to the Presiding Judge of the Administrative District. Instead, Judge Mancias has set the Motion to Recuse and the Motion for Mistrial to be heard at the same hearing. By pursuing an option unavailable through any rule or statute, Judge Evins abused his discretion as a matter of law. *Lamberti,* 776 S.W.2d at 652; *Greenberg,* 685 S.W.2d at 695. Since Judge Evins neither granted the motion to recuse nor referred the matter to the Presiding Judge of the Administrative District, Judge Mancias' Order was void. *Crawford v. State,* 807 S.W.2d 597, 598 (Tex.App.—Dallas 1991, no pet.).

The purpose of Rule 18a is to insure that all litigants may know that they have received a fair trial because the judge who presides over their case is impartial. The safeguards of the rule surely outweigh any delay tactic problems the rule may create. Judge Evins, by allowing Judge Mancias to set the Motion to Recuse and the Motion for Mistrial to be heard at one hearing, has clearly taken an option not available to him and by doing so has abused his discretion as a matter of law. I would correct this abuse by conditionally granting the writ of mandamus on the terms above stated.

---

5. Procedural requirements are mandatory and a party who fails to comply with Rule 18a waives the right to complain of a judge's failure to recuse himself. *Vickery v. Texas Carpet Co.,* 792 S.W.2d 759 (Tex.App.—Houston [14th Dist.] 1990, writ denied). The provisions of Rule 18a requiring a trial judge to either recuse himself or refer the motion never come into play if the motion to recuse is not timely. *Watkins v. Pearson,* 795 S.W.2d 257 (Tex.App.—Houston [14th Dist.] 1990, writ denied). Both *Vickery* and *Watkins* interpreted Rule 18b prior to the time its amendment became effective.