Karla A. WRIGHT, Appellant,

v.

Kenneth D. WRIGHT, Appellee.

No. 08–92–00456–CV.

Court of Appeals of Texas, El Paso.

Nov. 3, 1993.

Rehearing Overruled Dec. 1, 1993.

Walter E. Wilson, Odessa, for appellant.

R.C. 'Eric' Augesen, Odessa, for appellee.

Before OSBORN, C.J., and KOEHLER and BARAJAS, JJ.

## OPINION

BARAJAS, Justice.

This is an appeal from an order modifying child support and visitation. Trial was to the court. In twelve points of error, Appellant asserts that the trial court erred and abused its discretion in entering its order modifying support and visitation, in denying Appellant's Motion for New Trial, and in failing to recuse itself prior to the entry of its final order. We affirm the judgment of the trial court.

## I. SUMMARY OF THE PROCEEDINGS

Karla A. Wright, Appellant, and Kenneth D. Wright, Appellee, were divorced on May 28, 1991. Appellant was named as the sole managing conservator of the Wrights' two minor children. Appellee was named as the possessory conservator. The original decree of divorce ordered that Appellee "shall have possession of the children at all times as the parties may mutually agree, and failing mutual agreement, then such visitation as established by Section 14.033 of the Texas Family Code." Additionally, the decree ordered Appellee to pay child support in the amount of $563 per month and to maintain, at his sole cost and expense, medical, dental, health, and general hospitalization insurance for the children. Moreover, each party was ordered to pay 50 percent of all health care expenses of the children that are not paid by insurance.

On March 2, 1992, less than one year after entry of the original decree of divorce, Appellant filed her first Motion to Modify the decree. In her Motion to Modify, Appellant sought to have the amount of child support increased to meet the guidelines established by the Family Code as well as restrict Appellee's visitation privileges. In response, Appellee filed a Cross–Motion to Modify, seeking an order allowing either parent to designate a competent adult to pick up and/or return the children, as applicable, after periods of visitation. On May 18, 1992, Appellant filed her Amended Motion to Modify alleging additional facts in support of her desire to have Appellee's visitation restricted.

The trial court conducted a hearing on June 15, 1992 at which time the parties announced to the court that they had agreed that Appellee would continue to maintain the hospitalization on the children and pay 50 percent of any uncovered medical expenses. The parties further announced to the court that they had agreed to the visitation guidelines of the standard possession order as set forth in the Family Code, including the use of "designated persons" to pick up and return the children. At the hearing, the trial court recalculated the amount of child support, and based on new income figures for Appellee, the trial court increased the amount of support to $618 per month. Appellant objected to the trial court's calculation and determination of Appellee's net resources from which to determine the amount of support due on the basis that the trial court erroneously deducted the cost of hospitalization insurance for the children, which was to be paid by Appellee from his gross income. At the close of the hearing, the trial court orally pronounced "That will be the new order ...," referring to the purported agreement between the parties and the recalculated support. The trial court further directed Appellant's attorney to prepare the order for it's signature.

The record shows that the trial court's order orally pronounced at the close of the June 15 hearing, was never reduced to writing and entered as a judgment as the parties were unable to agree to the specific terms of the order to be entered. The disagreement between the parties centered around the definition and usage of the "designated competent adult" to pick up and return the children before and after periods of visitation. Appellant contends that Appellee was abusing this right by allowing his parents to pick up the children at the designated time, but hours prior to his arrival from out-of-town for his visitation period and keeping them until the designated time for return, but hours after his departure to his place of residence in San Antonio, Texas.

On July 17, 1992, Appellant filed her Motion for New Trial requesting a new hearing on her Motion to Modify. A Second Amended Motion to Modify was filed on September 11, 1992. This Motion to Modify was set for hearing on September 21, 1992.

At the September 21 hearing, Appellant presented evidence of Appellee's alleged misconduct during his visitation periods.[1] At the close of the hearing, the judge announced that he found no reason to deviate from the standard Family Code Provisions for support and visitation. The Order on Motions to Modify in Suit Affecting the Parent–Child Relationship was signed on that same day. On September 25, 1992, Appellant filed a request for findings of fact and conclusions of law. These findings and conclusions were signed and filed by the trial court on October 1, 1992. Thereafter, Appellant filed a Motion to Suspend Judgment During Appeal on October 7, 1992 and a Request for Additional or Amended Findings or Conclusions that same day.

The trial court, in its findings of fact, filed subsequent to the September 21 hearing, found that its order followed the Family Code guidelines established for support and visitation. In its conclusions of law, the trial court ruled that Tex.Fam.Code Ann. § 14.-053(b) (Vernon Supp.1993) provides that expenses for health insurance for the children

---

1. Appellant alleged that Appellee was subjecting the children to indecencies by persons known to Appellee and further that Appellee was not providing balanced meals and proper care for the children. However, Appellant also testified that she wanted the children to be able to see Appellee and have a good father.

are to be subtracted from the obligor's gross income in determining his net resources for the child support calculation. Additionally, the trial court ruled that Section 14.033(g)(4) allows a possessory conservator to designate a competent adult to pick up and return the children.

On October 14, 1992, Appellant filed her Motion to Recuse the trial judge. Appellant's Motion to Recuse was filed in response to the trial court's letter of October 13, 1992 to the parties informing them that another judge had been assigned to hear Appellant's Motion to Suspend Judgment. Subsequently, Appellant filed another Motion for New Trial on October 16, 1992 and an Amended Motion for New Trial on November 13, 1992. On November 20, 1992, Appellant's Motion to Suspend Judgment and Motion for New Trial were both denied by an assigned judge.

## II. *DISCUSSION*

### A. Motion for New Trial

■ In Points of Error Nos. One and Two, Appellant asserts that the trial court erred and abused its discretion in denying her Motion for New Trial. Specifically, Appellant's Motion for New Trial was based on Appellee's alleged fraudulent inducement of Appellant to enter into the original agreed judgment and the alleged perjured testimony of Appellee resulting in the trial court's order of September 21, 1992. A refusal to grant a motion for a new trial is tested by the abuse of discretion standard. *Jackson v. Van Winkle*, 660 S.W.2d 807, 809 (Tex.1983); *Eikenhorst v. Eikenhorst*, 746 S.W.2d 882, 886 (Tex.App.—Houston [1st Dist.] 1988, no writ). An appellate court should reverse a trial court for abuse of discretion only when "after searching the record, it is clear that the trial court's decision was arbitrary and unreasonable." *Simon v. York Crane & Rigging Co., Inc.*, 739 S.W.2d 793, 795 (Tex. 1987).

■ Appellant asserts that Appellee induced her into entering into the agreement at the June 15, 1992 hearing by fraudulently misrepresenting his intended use of the designated competent adult and his projected income figures for 1992. These misrepresen-

tations induced Appellant to agree to the modified order of June 15 which was never signed by the court, and waive hearings on her motions for sanctions and contempt pending at that time. The record, however, is void of any such extrinsic fraud. Extrinsic fraud is a wrongful act committed by an opposing party that prevents a party from knowing about her rights or defenses, or from having a fair opportunity to present them at trial. *Alexander v. Hagedorn*, 148 Tex. 565, 226 S.W.2d 996, 1001 (1950); *Lee v. Johnson*, 858 S.W.2d 58, 60 (Tex.App.—Houston [14th Dist.] 1993, n.w.h.). The record reflects that both parties were fully represented by counsel at the June 15 conference and hearing, and both announced to the court that an agreement had been reached. Further, Appellant had full opportunity to raise any concerns about the use of the designated competent adult and amount of child support at the September 21 hearing on the Motion to Modify.

Appellant next asserts that the September 21 order was based on the perjured testimony of Appellee. The record shows that while Appellee testified at the September 21 hearing that it was not his intent to use the designated competent adult as a means of giving his parents access or visitation rights to the children, he did testify at a subsequent hearing on November 9, 1992 that he wanted his parents to be able to spend time with the children.

Appellant claims that these inconsistent statements demonstrate that Appellee intended all along to use the designated competent adult privilege as a means of giving his parents a form of visitation; thus making his earlier testimony perjurious. We disagree. The record clearly demonstrates that the parties have a good-faith dispute as to the scope of the designated competent adult privilege. Appellant, citing no authority, asserts that any amount of time in excess of one hour is tantamount to grandparent visitation. This dispute does not render Appellee's earlier testimony, that he did not intend to use the privilege as a means of visitation for his parents, perjurious.

We find that the trial court's denial of Appellant's Motion for New Trial was not

arbitrary and unreasonable and was not an abuse of discretion. Accordingly, Appellant's Points of Error Nos. One and Two are overruled.

## B. Recusal

In Point of Error No. Three, Appellant asserts that the trial court erred and abused its discretion in failing to recuse itself and enter an order of recusal, thereby rendering its order of September 21, 1992 a nullity.

 When a motion to recuse a judge is filed, the judge must either recuse him- or herself or request the administrative judge to assign another judge to hear the motion. *See* TEX.R.CIV.P. 18a(c); *see also General Motors Corp. v. Evins,* 830 S.W.2d 355, 357 (Tex.App.—Corpus Christi 1992, no writ); *Gonzalez v. Gonzalez,* 659 S.W.2d 900, 901 (Tex.App.—El Paso 1983, no writ). In either case, the judge is prohibited from taking any further action in the case until the motion to recuse has been resolved. *See id.* The mandatory provisions in Rule 18a, however, never come into play unless and until a timely motion to recuse is filed.[2] *Watkins v. Pearson,* 795 S.W.2d 257, 259–60 (Tex.App.—Houston [14th Dist.] 1990, writ denied); *Gonzalez,* 659 S.W.2d at 901.

 The record in the instant case shows that Appellant did not file a timely Motion to Recuse the trial judge. Consequently, we find Rule 18a inapplicable in this case. Nonetheless, the Rules of Civil Procedure have created procedures for the voluntary recusal of a judge. TEX.R.CIV.P. 18b. Rule 18b provides in pertinent part:

(2) **Recusal.** A judge shall recuse himself in any proceeding in which:

(a) his impartiality might reasonably be questioned;

(b) he has a personal bias or prejudice concerning the subject matter or a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

. . . . . .

(4) In this rule:

(a) "proceeding" includes pretrial, trial, or other stages of litigation; . . . .

TEX.R.CIV.P. 18b.

Appellant argues that the trial judge in the instant case was personally biased against her, and that this prejudice prevented Appellant from receiving a fair and impartial hearing on September 21, 1992. She supports this claim of bias by citing comments of the trial judge at the hearing held on September 21, 1992, as well as his order after the hearing wherein the provision that each party pay 50 percent of all uncovered medical expenses was eliminated.

The record shows that at the hearing, the trial judge made the following comments regarding the children:

Do you think it would be in the best interest of the children in the interim, before the next hearing, for me to place them in the care of the Department of Human Resources? I don't like to leave children in an atmosphere where there is so much hatred and disagreement over petty things and let them be placed in foster care until . . . I can tell from what is going on in the courtroom that the children are just being a subject of a whole lot of bickering and hatred between their parents and that is not a healthy thing for children. . . . And I am inclined to think that foster care with designated visitation for both parties would be out at the Department of Human Resources, would be in the best interest of the children.

Appellant claims that the above comments, made before any testimony or evidence at that hearing had been received, show that the trial judge had been informed by outside sources of the state of conflict between the parties. We disagree. Appellee, in his brief, correctly points out that the trial judge's comments were made after observing the parties in the courtroom, and, although the comments were made before any evidence was received at that hearing, there had been a previous hearing before the same trial judge on June 15, 1992 at which time he could have observed the demeanor of the

---

**2.** In *Gonzalez,* 659 S.W.2d at 901–902, this Court held that a motion to recuse must be presented

more than ten days prior to the hearing in order to be considered timely.

parties. Additionally, as of the time of the September 21 hearing, the parties had filed voluminous pleadings and motions that indicated discord and a lack of goodwill between them.

The trial judge's order, which eliminated the allocation of uncovered medical expenses, likewise does not demonstrate a bias against Appellant. The record shows that parties had announced to the court that they were willing to accept an order which followed the support and visitation guidelines set out in the Texas Family Code. Since the Family Code makes no allowance for the payment of uncovered medical expenses, eliminating this provision from the order merely reformed the order to comply with the guidelines of the code. *See* TEX.FAM.CODE ANN. § 14.-053(d) (Vernon Supp.1993).

Since Appellants failed to file a timely Motion to Recuse before the hearing of September 21, and the record, on its face, does not indicate any bias or prejudice on the part of the trial judge toward either party, we find that the trial judge was under no duty to recuse himself. In the absence of these statutory disqualifications, we find the order of September 21, 1992 valid and otherwise enforceable.

On October 14, 1992, 23 days after the trial judge entered his final orders, Appellant filed her Motion to Recuse. We find Appellant's Motion to Recuse, while untimely for purposes to seeking recusal prior to the September 21 hearing, to effectively be a request for entry of a written order of recusal, pursuant to the trial judge's written request to the administrative judge requesting assignment of another judge to dispose of the case.[3]

Appellee, citing *Dunn v. County of Dallas,* argues that the trial judge's letter to the parties on October 13, 1992 is in effect, an order of recusal. *Dunn v. County of Dallas,* 794 S.W.2d 560, 562 (Tex.App.—Dallas 1990, no writ) (trial judge's letter to the administrative judge conveying his decision to recuse himself was held to be a valid order of recusal). We need not decide, however, whether the letter was a valid order, since the trial judge took no further action in the case after the letter was sent to the parties advising of his request for assignment of another judge. The trial judge entered his final order in the instant case on September 21, 1992. His findings of fact and conclusions of law were filed on October 1, 1992. Both actions were taken prior to the case being assigned to a new judge and prior to Appellant filing her Motion to Recuse. As noted above, there is nothing in the record that would indicate that the trial judge requested the assignment prior to October 1, the date his findings of fact and conclusions of law were filed. In fact, all indications are that the trial judge requested the assignment after Appellant filed her Motion to Suspend Judgment on October 7, 1992.

Given the above, we find that Appellant has not demonstrated that she was harmed in any way by the failure, if any, of the trial judge to enter a formal order of recusal. Accordingly, Appellant's Point of Error No. Three is overruled.

### C. Child Support

■■■ In Points of Error Nos. Four and Seven through Ten, Appellant asserts that the trial court erred and abused its discretion in setting the amount of child support. The decision as to the obligation to pay child support is substantially a discretionary one and will not be disturbed on appeal absent evidence of a clear abuse of this discretion. *Cohen v. Sims,* 830 S.W.2d 285, 288 (Tex. App.—Houston [14th Dist.] 1992, writ denied); *Stocker v. Magera,* 807 S.W.2d 753, 754 (Tex.App.—Texarkana 1990, writ denied). The test for abuse of discretion is not whether, in the opinion of this Court, the facts present an appropriate case for the trial court's actions. Rather, it is a question of whether the court acted without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985), *citing Craddock v. Sun-*

---

**3.** The record in the instant case is silent as to the date the trial judge formally requested the administrative judge to assign another judge. However, the letter requesting such an assign- ment makes reference to Appellant's Motion to Suspend Judgment which was filed on October 7, 1992.

*shine Bus Lines,* 134 Tex. 388, 133 S.W.2d 124, 126 (1939).

The Texas Family Code has established guidelines for the calculation of child support. *See* TEX.FAM.CODE ANN. § 14.05 et. seq. (Vernon 1986 and Supp.1993). These guidelines are intended to guide the courts in determining equitable amounts of child support. TEX. FAM.CODE ANN. § 14.052 (Vernon Supp.1993).

In Appellant's fourth point of error, it is contended that the court erred and abused its discretion by modifying the provision that provided for the payment by each party of 50 percent of uncovered medical expenses, as there was no evidence or insufficient evidence to support this modification. The original decree of divorce contained the above provision.[4] However, no mention was made of this provision at the September 21 hearing; both parties expressed their desires to abide by the standard provisions of the Family Code as to the support issue.

■ TEX.FAM.CODE ANN. § 14.061, which does not mandate an apportionment of uninsured medical expenses, provides in pertinent part as follows:

> (o) This section does not limit the authority of the court to enter or modify child support or health insurance orders containing provisions for payment of uninsured health expenses, health care costs, or health insurance premiums that are in addition to and inconsistent with this section.

TEX.FAM.CODE ANN. § 14.061(o) (Vernon Supp.1993).

Section 14.061(o) leaves the issue of uncovered medical expenses to the discretion of the court, and as discussed above, the court's decision will be disturbed only if it acted without reference to guiding rules and principles. In the instant case, there was evidence before the trial court, in the form of testimony of both parties, that the parties wished to abide by the guidelines as found in the Texas Family Code. We find that the trial court properly exercised its discretion in refusing to provide for the payment of uninsured

medical expenses, as payment of such is left to the sound discretion of the trial court pursuant to Section 14.061(o). Point of Error No. Four is overruled.

In Point of Error No. Seven, Appellant argues that the court abused its discretion in finding that Appellee's gross income for 1991 was $40,422 instead of $45,182.09. The record in the instant case shows that Appellee did report the sum of $45,182.09 on his 1991 income tax return, but the record further establishes that the trial court based Appellee's child support obligation on his 1992 earnings. Additionally, at the June 15, 1992 hearing, Appellant introduced evidence showing Appellee's salary for 1992 to be $40,422. Moreover, Appellant's own attorney stated at that same hearing, "Based on no overtime, Mr. Wright will have $40,422 gross income annually...." Given the above, Appellant's Point of Error No. Seven is overruled.

■ Appellant next argues in Point of Error No. Eight that the court abused its discretion in ruling that health insurance costs should be deducted from net resources prior to calculating the amount to be paid as child support. We disagree.

TEX.FAM.CODE ANN. § 14.053(b) defines net resources as follows:

> (b) Net Resources Defined. 'Net resources,' for the purpose of determining child support liability, are 100 percent of all wage and salary income and other compensation for personal services ... less (subtracting) 100 percent of social security taxes, federal income tax withholding for a single person claiming one personal exemption and the standard deduction, union dues, and expenses for health insurance coverage for the obligor's child....

TEX.FAM.CODE ANN. § 14.053(b) (Vernon 1993 Supp.) [emphasis added]. The plain language of this statute makes it clear that the costs of health insurance for the children are to be deducted from the obligor's gross income in determining the obligor's net resources. The table shown in Section 14.-055(b) is then applied to the net resources

---

4. The record shows that the unsigned "agreed order" of June 15, 1992 likewise contained a provision that provided for the payment by each party of 50 percent of uncovered medical expenses.

amount to determine the amount of child support due. *Salazar v. Attorney General,* 827 S.W.2d 41, 42 (Tex.App.—Corpus Christi 1992, writ denied). The record in the instant case confirms that the trial court utilized the above table in calculating the amount of support due from Appellee.

Appellant argues that Section 14.053(h) is inconsistent with Section 14.053(b) in that it does not allow a deduction of health insurance costs from gross income in calculating net income. A careful reading of that statute, however, demonstrates that the purpose of subsection (h) is to assist the courts in calculating the amount of deductions from gross income for taxes and social security to determine the obligor's net income as a single person claiming one personal exemption. Since many obligors may elect not to file their tax returns as single persons with one exemption, these charts serve as an aid in making the calculations for the courts. The net income calculation in subsection (h) is not the same as the net resources calculation in (b). Moreover, the "Instructions for Use" included in the subsection (h) tax charts clearly indicate that additional steps are required, after calculating net income, to determine net resources.[5]

*See* Tex.Fam.Code Ann. § 14.053 (Vernon Supp.1993).

The language in Section 14.053(d) provides that "the court will order the obligor to provide health insurance coverage for the child subject of the suit in addition to the amount of child support calculated pursuant to these guidelines." We do not interpret that language to mean that the costs of such insurance can not be subtracted from the obligor's gross income to determine the amount of support due. The insurance costs paid by the obligor are to be paid in addition to the child support ordered by the trial court, in that the insurance costs are a separate obligation, not included within the amount of the child support ordered.

In the present case, Appellee was ordered to pay $618 per month in support. He was also ordered to maintain and pay for hospitalization insurance for the children. These insurance costs are not part of the $618; they are a separate obligation. The trial court did not err in its calculation of net resources or the amount of child support due. Appellant's Point of Error No. Eight is overruled.

■■■ In Point of Error No. Nine, Appellant asserts that the trial court erred and abused its discretion in failing to order the increased child support to begin retroactively to March 2, 1992, the date her Motion to Modify was filed, or July 1, 1992, the date the "agreed order" was to take effect. While Tex.Fam.Code Ann. § 14.08(c)(2) empowers the trial court to retroactively modify support orders, the application of such provision is not mandatory, but rather is left to the broad discretion of the trial court. *Willis v. Willis,* 826 S.W.2d 700, 702 (Tex.App.—Houston [14th Dist.] 1992, no writ); *Rocha v. Villarreal,* 766 S.W.2d 895, 898–99 (Tex. App.—San Antonio 1989, no writ); *see also* Tex.Fam.Code Ann. § 14.08(c)(2) (Vernon 1986 and Supp.1993).

In the instant case, the trial court had before it the entire record of the various pleadings and proceedings that culminated at the hearing held on September 21, 1992. Indeed, the trial court was able to determine the need for retroactive support, if any. We

---

5. The instructions for use for the subsection (h) tax charts read as follows:

To use these tables, first compute the obligor's annual gross income. Then recompute to determine the obligor's average monthly gross income. These tables provide a method for calculating "monthly net income" for child support purposes, subtracting from monthly gross income the social security tax (Old-age, Survivors and Disability Insurance plus Hospital [Medicare] insurance) and the federal income tax withholding for a single person claiming one personal exemption and the standard deduction.

Thereafter, in many cases these guidelines call for a number of additional steps to complete the necessary calculations. For example, Section 14.053 provides for appropriate additions to "income" as that term is defined for federal income tax purposes, and for certain subtractions from monthly net income, in order to arrive at the net resources of the obligor available for child support purposes. Tex.Fam.Code Ann. § 14.053 (Vernon Supp.1993) [emphasis supplied].

find that the trial court did not abuse its discretion in failing to order the increased support to begin retroactively to the filing of the Motion to Modify, or to July 1, 1992, the date the "agreed order" was to take effect. Accordingly, Appellant's Point of Error No. Nine is overruled.

In Point of Error No. Ten, Appellant argues that the trial court abused its discretion in entering the September 21 order, in that it is ambiguous on its face and is invalid and unenforceable. We find Appellant's complaint to be essentially identical to her contention raised in Point of Error No. Eight, i.e., Appellee is ordered to maintain the insurance "at his sole cost and expense," but is able to deduct the costs of that insurance from his gross income in determining his net resources. As stated above, the insurance costs to be paid are in addition to the obligation to pay child support and are to be paid at Appellee's sole cost and expense. Finding that the order is not ambiguous on its face, invalid or otherwise unenforceable, Appellant's Point of Error No. Ten is overruled.

### D. Visitation

In Points of Error Nos. Five, Six, and Twelve, Appellant asserts that the trial court erred and abused its discretion in entering the order modifying Appellee's rights to possession of the children. The area of custody and visitation, like that of child support, is one in which the trial court is recognized as enjoying broad discretion. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex.1982); *MacCallum v. MacCallum*, 801 S.W.2d 579, 582 (Tex.App.—Corpus Christi 1990, writ denied). The best interest of the child is to be the primary consideration in the exercise of this discretion, *see* TEX.FAM.CODE ANN. § 14.-07(a) (Vernon 1986 and Supp.1993), and thus, decision of the trial court will not be disturbed on appeal unless it is shown that there has been a clear abuse of this discretion. *Gillespie*, 644 S.W.2d at 451; *MacCallum*, 801 S.W.2d at 582.

The original decree of divorce awarded Appellee "possession of the children at all times as the parties may mutually agree, and failing mutual agreement, then such visitation as established by Section 14.033 of the Texas Family Code." Modification of an order regarding rights to possession and visitation of children is set out in Section 14.-08(c)(3) which provides in pertinent part as follows:

(c) After a hearing, the court may modify an order or portion of a decree that:

. . . . .

(3) sets the terms and conditions for possession of or access to a child, or prescribes the relative rights, privileges, duties, and powers of conservators if:

(A) the circumstances of the child or a person affected by the order or portion of the decree to be modified have materially and substantially changed since the date of the rendition of the order or decree; or

(B) the order or portion of the decree to be modified has become unworkable or inappropriate under existing circumstances; . . .

TEX.FAM.CODE ANN. § 14.08(c)(3) (Vernon 1986 and Supp.1993). The record in the instant case shows that there is no dispute that the above requirements for modification have been met, since Appellee had moved to a distant city since the entry of the original order and the parties had become highly contentious toward each other.

The Order on Motions to Modify in Suit Affecting the Parent–Child Relationship of September 21 decrees that the standard possession order of the Texas Family Code shall be immediately in effect and specifically lists the rights, privileges, and duties of the parties regarding visitation. Among the rights and privileges granted to Appellee in the Order Modifying are:

(1) the right to designate a competent adult to pick up and return the children at the beginning and end of visitation periods; and

(2) the right to begin the visitation periods during holidays and spring vacation when the child's school day ends, rather than at 6:00 p.m. on those days.

In Point of Error No. Five, Appellant complains that the trial court abused its discretion in failing to restrict or place conditions

on Appellee's periods of visitation. Appellant points to evidence that the children were subjected to indecencies by persons known to Appellee while in the possession of Appellee and were not provided with balanced meals or proper care by Appellee in support of her complaint. This evidence, along with Appellee's denial of the allegations, was presented to the court at the September 21 hearing. At the conclusion of the hearing, the court announced, "I find that there is no reason to deviate from the Family Code standard provisions."

The mere fact that a trial court may decide a matter within its discretionary authority in a different manner than an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *Downer*, 701 S.W.2d at 242, *citing Southwestern Bell Telephone Co. v. Johnson*, 389 S.W.2d 645, 648 (Tex.1965) and *Jones v. Strayhorn*, 159 Tex. 421, 321 S.W.2d 290, 295 (1959). As stated earlier, the trial court is in a better and more appropriate position than an appellate court to evaluate the testimony and evidence adduced at the hearing and determine the best interests of the children. Therefore, we find no abuse of discretion by the trial court in not restricting or imposing conditions on the visitation of Appellee. Point of Error No. Five is overruled.

In Point of Error No. Six, Appellant asserts that the trial court erred and abused its discretion in concluding that it was going to enter a "standard" possession order, in that the order actually entered deviated, without explanation, from the "standard" order. Appellant's complaint is based on the premise that the modified order permits Appellee's possession during holidays and spring vacation to commence at the time school recesses for the holiday or vacation, rather than at 6 p.m. on those days.

Appellant maintains that the above periods of visitation are not standard periods of possession, but rather are periods of "alternative possession" under the Family Code. We disagree. While TEX.FAM.CODE ANN. § 14.-033(e) provides that possession during the above periods is to begin at 6 p.m. on those days, Section 14.033(i) outlines alternative possession times. Section 14.033(i) reads in pertinent part:

> (i) Alternative Possession Times. If a child is enrolled in school, the possessory conservator consents, and the court finds that it is in the best interest of the child, the standard order may expressly provide that the possessory conservator's period of possession shall begin or end, or both, at a different time expressly set in the standard order under and within the range of alternative times provided by one or both of the following subdivisions:
>
> (1) instead of a period of possession by a possessory conservator beginning at 6 p.m. on the day school recesses, the period of possession may be set in the standard order to begin at the time school recesses or at any time between the time school recesses and 6 p.m.;
>
> . . . .

TEX.FAM.CODE ANN. § 14.033(i) (Vernon Supp.1993) [emphasis added].

A careful reading of the statutes shows that the alternative possession times in subsection (i) are not a deviation from the standard order. We find that the alternative possession as envisioned by Section 14.033(i) is merely a variant of the standard possession order that may be entered if the possessory conservator agrees and the court finds that it is in the best interest of the child. In the instant case, the evidence supports the fact that Appellee, the possessory conservator, is agreeable to alternative periods of possession and the trial court found the possession order to be in the best interest of the children. Accordingly, we find that the trial court did enter a standard possession order and did not abuse its discretion. Point of Error No. Six is overruled.

In Point of Error No. Twelve, Appellant asserts that the trial court erred and abused its discretion in failing to restrict Appellee's use and abuse of the "designated competent adult" privilege. Appellant maintains that Appellee has allowed the designated adults, i.e., Appellee's parents, to pick up the children at the designated time, but hours prior to his actual arrival in Odessa for his visitation period and return the children at the

designated time, but hours after his departure for San Antonio.[6] This, according to Appellant, has the effect of unilaterally giving visitation rights to the grandparents.

The Texas Family Code expressly provides that either parent may designate any competent adult to pick up and return the child, as applicable. *See* TEX.FAM.CODE ANN. § 14.033(g)(4) (Vernon Supp.1993). The code provision gives no guidance as to the time that said adult may have the child before the parent arrives for visitation and after the parent leaves. As the record indicates, Appellant testified that she believes that the designated competent adult privilege allows the adult to pick up the child 1 to 1½ hours before the parent arrives and keep the child for a like period after the parent leaves. Wholly failing to cite any authority, Appellant contends that any amount of time more than this is tantamount to visitation by the designated competent adult. We disagree.

The trial court heard the evidence of the alleged abuse of Appellee's visitation privilege. We decline to rule that as a matter of law, any period of time that Appellee's parents spend with the children, without Appellee being present, is visitation. Therefore, we find that the trial court's failure to restrict Appellee's use of the privilege was not an abuse of discretion. Accordingly, Appellant's Point of Error No. Twelve is overruled.

### E. Motion to Suspend Judgment

In Point of Error No. Eleven, Appellant asserts that the trial court erred and abused its discretion in failing to suspend its order of September 21, 1992 pending this appeal. The record shows that Appellant's Motion to Suspend Judgment and Application for Temporary Orders was filed on October 7, 1992. This Motion contained substantially the same allegations of Appellee's misconduct that were presented in Appellant's Motion to Modify and as presented at the September 21 hearing. After a hearing on November 20, 1992, at which time more of the same evidence was presented, Appellant's Motion to Suspend Judgment was denied.

TEX.FAM.CODE ANN. § 11.19(c) gives the trial court the discretion whether to suspend a judgment pending appeal in a suit affecting the parent-child relationship. *Morris v. Morris*, 654 S.W.2d 789, 790–91 (Tex. App.—Tyler 1983, no writ). In applying the identical abuse of discretion standard, we find that the trial court did not abuse its discretion in denying this Motion. As noted above, the evidence before the trial court on November 20, 1992 was substantially the same evidence the trial court heard at the September 21 hearing. Finding no reason to suspend the judgment, it properly denied the Motion. Accordingly, Appellant's Point of Error No. Eleven is overruled.

Having overruled each of Appellant's twelve points of error, the judgment of the trial court is affirmed.

---

6. The parties in the instant case were divorced in Ector County, Texas. At the time of the hearing on Appellant's Motion to Modify, Appellee was a resident of San Antonio, Texas. A court shall take judicial notice of a fact, where a party so requests and the court is supplied with the proper information. *City of Dallas v. Moreau*, 718 S.W.2d 776, 781 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.) *citing* TEX.R.CIV.EVID. 201(d).

Further, this Court may take judicial notice of a matter for the first time on appeal. *Moreau*, 718 S.W.2d at 781. *See also Eppenauer v. Eppenauer*, 831 S.W.2d 30, 31 n. 1 (Tex.App.—El Paso 1992, no writ). Accordingly, this Court will take judicial notice of the fact that the distance between Appellant's place of residence in San Antonio and the children's place of residence in Odessa is 335 miles.