Norma CAMPBELL, Appellant,

v.

Barbara SALAZAR, Appellee.

No. 08–96–00139–CV.

Court of Appeals of Texas,
El Paso.

May 30, 1997.

Rehearing Overruled Sept. 11, 1997.

Woodrow W. Bean, II, El Paso, for Appellant.

Kristina K. Voorhies, El Paso, for Appellee.

Before BARAJAS, C.J., and LARSEN and McCLURE, JJ.

## OPINION

BARAJAS, Chief Justice.

This is an appeal from a finding by the trial court that Norma Campbell slandered Barbara Salazar. Judgment was rendered for the sum of $58,843.63 that included past mental anguish, past loss of income, exemplary damages, and prejudgment interest. We affirm the judgment of the trial court.

## I. SUMMARY OF THE EVIDENCE

Norma Campbell, Appellant, first met Barbara Salazar in the summer of 1992 before leaving on a trip to Las Vegas with Salazar and another friend. While in Las Vegas, Appellant discovered that she was missing $725 when she attempted to make a purchase in a gift shop. Appellant admitted that she did not initially accuse Salazar of taking her

money while in Las Vegas, but she admitted that she did make that accusation once she returned home. She testified that no one was present at the time of the accusation. She further testified to telling her friend, Lydi, that she was missing the $725 but denies accusing Salazar of taking the money. Appellant admits that she did tell Lydi, "Do you think that Barbara took it?" She does however deny that she ever told anyone that "Barbara took my money."

At trial, Leane Coon was subpoenaed by Barbara Salazar and testified at trial but admitted that she did not go on the Las Vegas trip and had no personal knowledge of what happened during the trip. Coon testified that Appellant thought that Salazar stole her money.

█ Barbara Salazar also testified at trial. Salazar stated that she met Appellant at the airport before leaving for Las Vegas. While in Las Vegas, Appellant would sometimes become grouchy and somewhat hateful. Appellant never accused Salazar of theft while in Las Vegas. Salazar first learned of the accusations of theft once she went to Lydi Lewendowski's house to pick up an Avon order and pay a third of the cost of the rental car the three had rented in Las Vegas. Upon arriving, both Lydi and Appellant were present. When asked by counsel if Appellant said anything to her, Salazar testified, without objection, that Appellant said that Lydi told Appellant that Salazar had taken Appellant's money, and that an attendant at the casino said that Salazar likewise had taken Appellant's money. Salazar was shocked and asked Appellant, "[w]hat do you mean I took your money?" and Appellant said, "[y]es, you took my money." [1] Salazar stated that her heart started pounding, that she could not breath, that she was shaking and felt sick to her stomach. Lydi was present at the time of making this statement. Salazar further testified that Appellant said,

1. Appellant never objected during trial to the testimony offered by Appellee. Rule 802 of the Texas Rules of Civil evidence states: "Hearsay is not admissible except as provided by these rules or by other rules prescribed by the Supreme Court or by law. Inadmissible hearsay admitted without objection shall not be denied probative value merely because it is hearsay." TEX.R.CIV. EVID. 802. A hearsay objection is waived if it is not asserted in the trial court. *Defendant De La Garza v. Salazar*, 851 S.W.2d 380, 383 (Tex. App.—San Antonio 1993, no writ). Prior to the adoption of Rule 802, which became effective September 1, 1983, inadmissible hearsay would not support a judgment even when admitted without objection. *Furr's Supermarket, Inc. v. Williams*, 664 S.W.2d 154, 157 (Tex.App.—Amarillo 1983, no writ) *citing Texas Co. v. Lee*, 138 Tex. 167, 157 S.W.2d 628, 631 (1941); *Aetna Ins. Co. v. Klein*, 160 Tex. 61, 325 S.W.2d 376, 381 (1959); *Aquamarine Associates v. Burton Shipyard, Inc., et al.*, 659 S.W.2d 820, 821 (Tex.1983).

The policy reasons behind this change has been commented on. In 33 *Goode, Wellborn, and Sharlot*, TEXAS RULES OF EVIDENCE: CIVIL AND CRIMINAL, § 802.1, at 571–72 (1988), the authors discussed this policy:

> 'The Texas drafters added it (the second sentence in Rule 802) in order to overturn a long-standing Texas doctrine by which inadmissible hearsay, admitted because of failure to object, was artificially deemed to have no probative value so that it could not in any way support a finding of fact or a verdict. Only one state, Georgia, maintains this view. In addition to being unsound in principle, the 'hearsay-is-no-evidence' doctrine had

> pernicious practical consequences. It permitted a party without the burden of proof, by deliberately failing to object to hearsay when offered, to deceive a party having the burden of proof into believing he had adduced sufficient evidence on all necessary elements of his case, only to emerge from 'behind the log' on appeal to argue, often successfully, that the verdict or judgment was not supported by evidence. Critics have urged for many years that this unsound and unfair concept be purged from Texas law. Rule 802 does not accord probative value to hearsay evidence. It merely ensures that if hearsay is admitted by waiver, it will be treated like any other evidence admitted by waiver. That is, whatever rational probative value it may have will not be denied artificially as under prior law. *Goods, Wellborn, and Sharlot*, at 571–572. *Fernandez v. State*, 805 S.W.2d 451, 455–56 (Tex.Crim.App. 1991).

The court in *Fernandez* further stated that the second sentence of Rule 802, which has the same wording in both the Civil and Criminal Rules of Evidence, was intended to discourage attorneys from deferring their objections to hearsay evidence because they were confident the evidence would be disavowed in an appellate sufficiency review. *Id.* at 456. Clearly Rule 802 places the responsibility for waiver upon the party who fails to object. *Id.* In the case before this Court, Appellant did not object to the statements made by Appellee and the jury was well within its discretion to believe or disbelieve the testimony offered.

"I know you took my money" and then two or three days later Appellant called Salazar and told her "I know you took my money. I'm going to sue you. I'm going to file charges. I'm going to call the police and have you arrested." Salazar further stated:

I had a vision of me being arrested, handcuffed and led into the county jail—into the county jail down here with TV cameras and newspaper headlines, and I became very, very upset. I—I couldn't imagine what would happen to me if I was arrested. If she actually filed charges, I knew that I would probably be arrested and I was hoping that if she was going to do it and they were going to arrest me, it would happen before school started. I didn't want to be arrested in front of my students.

When her attorney asked Salazar whether Appellant's friends ever told her not to worry about these allegations, she said, "[t]hey told me that she would probably press charges and that she—she did tell them—they did not say, '[s]he thinks you took her money.' They said that she told them 'Barbara took my money. She stole my $700.'"

The jury in this case returned a verdict finding that Appellant slandered Salazar and awarded Salazar actual damages for past mental anguish in addition to damages for past loss of income. The jury also found that there was malice and awarded the plaintiff punitive damages. After a final judgment was entered, Appellant filed a motion for judgment n.o.v. and a motion for new trial, which were either denied by the trial judge or overruled by operation of law. Appellant now brings various points of error.

## II. DISCUSSION

Appellant advances twenty points of error alleging no evidence, insufficient evidence, various other errors, and findings by the jury that are against the great weight and preponderance of the evidence.

### A. Points of Error Nos. Two, Three, and Four

Appellant's second and third points of error allege that the trial court erred in denying her Motion for Judgment n.o.v. and/or Motion for New Trial in that there was no evidence, insufficient evidence, or the finding by the jury to Question No. 1 was against the great weight and preponderance of the evidence. Appellant's Point of Error No. Four states that the trial court erred in denying her Motion for Judgment n.o.v. relative to the jury's finding that a slander occurred in response to Question No. 1 in that the Appellant established the absence of a slander as a matter of law.

### 1. Standards of Review for Legal and Factual Sufficiency

A factual insufficiency point requires us to examine all of the evidence in determining whether the finding in question is so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951); *Tseo v. Midland Am. Bank*, 893 S.W.2d 23, 25–26 (Tex.App.—El Paso 1994, writ denied); *Hallmark v. Hand*, 885 S.W.2d 471, 474 (Tex.App.—El Paso 1994, writ denied). The reviewing court cannot substitute its conclusions for those of the jury. If there is sufficient competent evidence of probative force to support the finding, it must be sustained. *Tseo*, 893 S.W.2d at 26; *Texas Tech Univ. Health Sciences Ctr. v. Apodaca*, 876 S.W.2d 402, 412 (Tex.App.—El Paso 1994, writ denied). It is not within the province of this Court to interfere with the jury's resolution of conflicts in the evidence, or to pass on the weight or credibility of the witnesses' testimony. *Benoit v. Wilson*, 150 Tex. 273, 239 S.W.2d 792, 796 (1951); *Southwest Airlines Co. v. Jaeger*, 867 S.W.2d 824, 829–30 (Tex.App.—El Paso 1993, writ denied). Where there is conflicting evidence, the jury's verdict on such matters is generally regarded as conclusive. *Montgomery Ward & Co. v. Scharrenbeck*, 146 Tex. 153, 204 S.W.2d 508, 512 (1947); *Tseo*, 893 S.W.2d at 26; *Hallmark*, 885 S.W.2d at 474.

On the other hand, when considering a "no evidence" legal insufficiency point, we consider only the evidence that tends to support the jury's findings and disregard all evidence and inferences to the contrary. *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965);

*Texas Tech Univ. Health Sciences Ctr. v. Apodaca,* 876 S.W.2d 402 (Tex.App.—El Paso 1994, writ denied). If there is more than a scintilla of evidence to support the questioned finding, the "no evidence" point fails. *Tseo v. Midland Am. Bank,* 893 S.W.2d 23, 25 (Tex.App.—El Paso 1994, writ denied); *Hallmark v. Hand,* 885 S.W.2d 471, 474 (Tex.App.—El Paso 1994, writ denied).

## 2. Standard of Review for Granting a New Trial

The standard we employ to determine if a trial court erred in granting a new trial is the abuse of the discretion standard. A trial court has wide discretion in denying a motion for new trial, and its action will not be disturbed on appeal absent a showing of an abuse of discretion. *Jackson v. Van Winkle,* 660 S.W.2d 807, 809 (Tex.1983); *Alfredo O. Sanchez v. Sandra Harris King, Exxon Co., USA a/k/a Exxon Corp.,* 932 S.W.2d 177, 180 (Tex.App.—El Paso 1996, no writ); *Border Apparel–East, Inc. v. Guadian,* 868 S.W.2d 894, 896 (Tex.App.—El Paso 1993, no writ); *Southwest Airlines Co. v. Jaeger,* 867 S.W.2d 824, 831 (Tex.App.—El Paso 1993, writ denied); *Wright v. Wright,* 867 S.W.2d 807, 810 (Tex.App.—El Paso 1993, writ denied). The standard of review depends on the complaint preserved by the motion for new trial. *Sanchez,* 932 S.W.2d at 180; *Hicks v. Ricardo,* 834 S.W.2d 587, 590 (Tex.App.—Houston [1st Dist.] 1992, no writ). An appellate court should reverse a trial court for abuse of discretion only when "after searching the record, it is clear that the trial court's decision was arbitrary and unreasonable." *Simon v. York Crane & Rigging Co., Inc.,* 739 S.W.2d 793, 795 (Tex.1987); *Border Apparel–East, Inc.,* 868 S.W.2d at 896; *Jaeger,* 867 S.W.2d at 831; *Wright,* 867 S.W.2d at 810. The test for abuse of discretion is not whether, in the opinion of this Court, the facts present an appropriate case for the trial court's actions. Rather, it is a question of whether the court acted without reference to any guiding rules and principles. *Guadian,* 868 S.W.2d at 896. Another way of stating the test is whether the act was arbitrary or unreasonable. *See Smithson v. Cessna Aircraft Co.,* 665 S.W.2d 439, 443 (Tex.1984); *Landry v. Travelers Ins. Co.,* 458 S.W.2d 649, 651 (Tex.1970); *Guadian,* 868 S.W.2d at 896. The mere fact that a trial court may decide a matter within its discretionary authority in a different manner than an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *See Southwestern Bell Telephone Co. v. Johnson,* 389 S.W.2d 645, 648 (Tex. 1965) and *Jones v. Strayhorn,* 159 Tex. 421, 321 S.W.2d 290, 295 (1959); *Guadian,* 868 S.W.2d at 896. A mere error of judgment is not an abuse of discretion. *Loftin v. Martin,* 776 S.W.2d 145, 146 (Tex.1989); *Guadian,* 868 S.W.2d at 896.

## 3. Elements of Slander

In determining whether slander occurred, this Court has provided the following definition. Slander is:

(1) a defamatory statement that is

(2) communicated or published to a third person

(3) without legal excuse.

*Duran v. Furr's Supermarkets, Inc.* 921 S.W.2d 778, 792 (Tex.App.—El Paso 1996, no writ).

A statement is defamatory if the words tend to injure a person's reputation, exposing the person to public hatred, contempt, ridicule, or financial injury. *Duran,* 921 S.W.2d at 792; TEX.CIV.PRAC. & REM. CODE ANN. § 73.001 (Vernon 1986); *Einhorn v. LaChance,* 823 S.W.2d 405, 410–11 (Tex. App.—Houston [1st Dist.] 1992, writ dism'd w.o.j.). Whether words are capable of the defamatory meaning the plaintiff attributes to them is a question of law for the court. *Duran,* 921 S.W.2d at 792; *Musser v. Smith Protective Serv., Inc.,* 723 S.W.2d 653, 654–55 (Tex.1987); *Einhorn,* 823 S.W.2d at 411. The court construes the statement as a whole in light of surrounding circumstances based upon how a person of ordinary intelligence would perceive the entire statement. *Id.* Only when the court determines the complained of language to be ambiguous or of doubtful import should a jury be permitted to determine the statement's meaning and the effect the statement has on the ordinary reader or listener. *Duran,* 921 S.W.2d at 792; *see Musser,* 723 S.W.2d at 655. If a

written or oral statement unambiguously and falsely imputes criminal conduct to the plaintiff, it is libelous or slanderous *per se. Duran,* 921 S.W.2d at 792; *Ramos v. Henry C. Beck Co.,* 711 S.W.2d 331, 334 (Tex.App.—Dallas 1986, no writ). In suits brought by private individuals, truth is an affirmative defense to slander. *Randall's Food Markets, Inc. v. Johnson,* 891 S.W.2d 640, 646 (Tex.1995); *Duran,* 921 S.W.2d at 792; *Town of South Padre Island v. Jacobs,* 736 S.W.2d 134, 140 (Tex.App.—Corpus Christi 1986, writ denied).

Publication of defamatory words means to communicate orally to some third person capable of understanding their defamatory import and in such a way that he did so understand. *Marshall Field Stores, Inc. v. Gardiner,* 859 S.W.2d 391, 396 (Tex.App.—Houston [1st Dist.] 1993, writ dism'd w.o.j.); *Houston Belt & Terminal Ry. v. Wherry,* 548 S.W.2d 743, 751 (Tex.Civ.App.—Houston [1st Dist.] 1977, writ ref'd n.r.e.). If a reasonable person would recognize that his act creates an unreasonable risk that the defamatory statements will be communicated to a third party, his conduct is negligent communication, which amounts to publication as much as an intentional communication. *Galveston County Fair & Rodeo, Inc. v. Glover,* 880 S.W.2d 112, 119 (Tex.App.—Texarkana 1994, no writ); *First State Bank of Corpus Christi v. Ake,* 606 S.W.2d 696, 701 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n.r.e.)(quoting RESTATEMENT (SECOND) OF TORTS § 577 cmt. k (1977)); *see also Marshall Field Stores, Inc.,* 859 S.W.2d at 396; *Chasewood Constr. Co. v. Rico,* 696 S.W.2d 439, 445–46 (Tex. App.—San Antonio 1985, writ ref'd n.r.e.). In addition, although the plaintiff in a libel or slander action must be the particular person about whom the allegedly defamatory statements are made, which normally means the plaintiff must be named, *Glover,* 880 S.W.2d at 119; *see Baubles & Beads v. Louis Vuitton, S.A.,* 766 S.W.2d 377, 381 (Tex.App.—Texarkana 1989, no writ), publication does not require that the plaintiff be named, if those who know the plaintiff and are acquainted with him understand that the defamatory publication referred to him. *Glover,* 880 S.W.2d at 119; *Newspapers, Inc. v. Matthews,* 161 Tex. 284, 339 S.W.2d 890, 894 (1960); *Davis v. Davis,* 734 S.W.2d 707, 711 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.).

## 4. Appellant's Points of Error

Prior to answering Question No. 1 regarding whether slander occurred, the jury heard from Appellant, Barbara Salazar, and Leane Coon. It was revealed at trial that Appellant has had problems with her memory and that she has even been under medical care for this problem. When she was asked whether or not she has Alzheimer's she responded, "Well, no, I'm not sure." Appellant has been taking medication for problems but she was not sure of the specific nature of them because her doctor only told her daughter. Testimony elicited from Appellant shows that there is a memory problem as exhibited by the previous loss of her car that might have occurred at a Mervyn's store but Appellant stated, "I'm not sure." She testified that she was treated by Dr. Kaim when, as she stated, "I was losing my memory." She had been seeing Dr. Kaim for two and one-half years' prior to the trial date.

As noted above, Appellant testified that she first accused Salazar of taking her money when she was at home, although she stated that no one was present. She also testified that she just told Lydi that $725 was missing but denies telling Lydi that Salazar took her money. When asked if she recalled swearing under oath to her answers to interrogatories if she ever accused Salazar of taking her money she said, "I don't think so" and "I don't know if I did or not." When Appellant was asked if she ever stated in front of a third person, other than herself and Salazar that Salazar had stolen her money she responded, "I haven't said anything to anybody, to anyone besides Barbara and besides Lydi." Appellant then testified, after being asked what was it she said to Lydi, that she told Lydi, "I said—I asked her, 'Do you think that Barbara took it?' " The transcript further reveals:

Q. Mrs. Campbell, do you recall—are you accusing now Mrs. Salazar of taking your money?

A.  No, I'm not accusing anybody any more.

Q.  Do you recall me asking in these interrogatories, 'State whether you claim that the alleged statements regarding the plaintiff taking your money were true?'  Do you recall what you said?

A.  I probably said, 'Yes.'

Q.  You said, 'No.'

A.  I said, 'No'?

Q.  You said, 'No,' that the statements that she took your money were not true, that she didn't take your money.

A.  I didn't tell you that she didn't take my money.

Q.  Yes, you did.

A.  I didn't tell anybody.  I might have to you.  I don't know.  I can't remember.

The next witness to testify was Leane Coon. She has known Appellant for approximately thirty years and the relationship with her is "kind of like my second mom or used to be long years ago."  Although Coon did not go on the trip to Las Vegas, she testified that she had a conversation with Appellant in which the trip was discussed and Appellant said, "I think your friend Barbara took some money from me."  Coon further testified that there was a series of phone calls between Appellant and Salazar and that she was in the middle of it.  She does admit telling Salazar that Appellant thought that Salazar had taken her money.

The last witness called was Salazar.  She testified that she met Appellant at the airport while waiting to leave for Las Vegas. Salazar also testified that she has been teaching school for eighteen years and that before the present case, she has never been accused of theft or arrested.  Appellant never accused her of the theft while they were in Las Vegas.  The accusations occurred about two weeks later when Salazar went to Lydi's house to pick up an Avon order and upon arriving she saw Appellant was there.  Salazar then testified that in the presence of Lydi, Appellant said that Lydi told her (Campbell ) that she (Salazar ) had taken her (Campbell's) money, that an attendant at the casino told her (Lydi) that she (Salazar ) had taken her (Campbell's) money.[2]  Salazar then testified that she asked, "[w]hat do you mean I took your money?"  Appellant responded, "[y]es, you took my money."  Salazar further testified, "[a]t that particular time she only said, 'I know you took my money.'  And I said, 'Well, if you think that little of me that you would accuse me of that, I have nothing more to say to you.'  And I left."  The record further reflects:

Q.  Okay. Then when is the next time that anybody spoke to you about this theft of the money?

A.  Oh, two or three days later.  Early in the morning, about 5:30 in the morning my telephone rang and it was Mrs. Campbell and she said, 'I know you took my money. I'm going to sue you.  I'm going to file charges.  I'm going to call the police and have you arrested.'

Q.  And what did you say at that point?

A.  I said, 'I did not take your money.  I never saw your money.  I never took your money.'  And she said, 'Yes, you did.  I know you took my money.'  And then she hung up.

The jury heard testimony from Salazar that no one ever told her not to worry about the accusations.  She stated that none of Appellant's family ever contacted her and told her not to worry.  She also stated that her **friends** never called her and told her not to worry.  In fact, Salazar testified that Appellant's friends "told me that she would probably press charges and that she—she did tell them—they did not say, '[s]he thinks you took her money.'  They said that she told them 'Barbara took my money.  She stole my $700.'  Those are the exact words that they told me she said to them."

■  After hearing all of the testimony and weighing the credibility of the above witnesses, the jury found that Appellant slandered Salazar when it answered Question No. 1. As noted above, this Court cannot substitute its conclusions for those of the jury and cannot interfere with the jury's resolution of conflicts in the evidence or pass

**2.**  The Court notes that this is "unobjected to" hearsay which will not be denied probative value merely because it is hearsay, pursuant to Rule 802 of the Rules of Civil Evidence.

on the weight or credibility of the witnesses' testimony.

In reviewing the record and applying the above standards of review and definition of slander, we conclude that the trial court did not err in denying Appellant's motion for new trial or motion for judgment n.o.v. and there was more than a scintilla of evidence for the jury to conclude that Appellant slandered Appellee and this finding is not against the great weight and preponderance of the evidence. Accordingly, Appellant's Points of Error Nos. Two, Three, and Four are overruled.

## B. Points of Error Nos. Five, Fifteen, and Sixteen

In Points of Error Nos. Five, Fifteen, and Sixteen, Appellant maintains that the finding of malice was against the great weight and preponderance of the evidence; that the trial court erred in denying Appellant's motion for judgment n.o.v. and/or motion for new trial in that there was no evidence or insufficient evidence to support the jury's answer to Question No. 3 where there was a finding of malice; and the trial court erred in denying Appellant's motion for judgment n.o.v. relative to the jury's finding of malice in response to Question No. 3 in that the absence of malice was established as a matter of law. We disagree.

Actual malice in a defamation action means publication of a statement with knowledge that it is false, or with reckless disregard of whether it is true. *Hagler v. Proctor & Gamble Mfg. Co.*, 884 S.W.2d 771, 771–72 (Tex.1994); *Stephens v. Delhi Gas Pipeline Corp.*, 924 S.W.2d 765, 771 (Tex. App.—Texarkana 1996, no writ). In order to establish malice, the plaintiff must prove the statement was made with knowledge that it was false, or with reckless disregard of whether it was true such that defendant entertained serious doubts as to the truth of the publication. *Carr v. Brasher*, 776 S.W.2d 567, 571 (Tex.1989); *Calhoun v. Chase Manhattan Bank (U.S.A.), N.A.*, 911 S.W.2d 403, 409 (Tex.App.—Houston [1st Dist.] 1995, no writ).

The record in the instant case reflects that Appellant testified that although she did not directly accuse Salazar of stealing the money, she did state that she asked Lydi if she thought Salazar took it. Coon testified that Appellant told her that "I think your friend Barbara took some money from me." Salazar testified that when she talked to Appellant's friends that they told her that Appellant thought that she took her money and further, that Appellant told them that Salazar took her money. While there is a possibility that someone other than Salazar could have taken the money, the record does not reflect the Appellant attempted to investigate the theft further. It appears, from Appellant's own testimony, that although she was not sure that Salazar actually took her money, that testimony, in combination with Salazar's testimony that Appellant accused her of taking the money in front of Lydi and other "friends," shows that Appellant entertained serious doubts as to the truthfulness of her statements.

The jury in this case heard the testimony of Appellant, Salazar, and Coon and concluded that the statements were made with malice. We find that the record reflects the existence of more than a scintilla of evidence to support the jury finding. Accordingly, the trial court did not err in denying Appellant's motion for judgment n.o.v. and Points of Error Nos. Five, Fifteen, and Sixteen are overruled in their entirety.

## C. Points of Error Nos. Seventeen, Eighteen, Nineteen, and Twenty

In Points of Error Nos. Seventeen, Eighteen, Nineteen, and Twenty, Appellant alleges that the trial court erred in denying her motion for judgment n.o.v. and/or motion for new trial in that there was no evidence or, alternatively, insufficient evidence to support the jury's award of punitive damages in answer to Question No. 4; the trial court erred in denying her motion for new trial in that the jury's award of punitive damages in answer to Question No. 4 was against the great weight and preponderance of the evidence, and the award of punitive damages was not

supported by actual damages and was manifestly too large. Once again, we disagree.

As the jury's finding of malice is supported by the evidence, the amount of exemplary damages awarded against Campbell was largely within its discretion. *Acme Boot Co., Inc. v. Montenegro,* 862 S.W.2d 806, 810–11 (Tex.App.—El Paso 1993, no writ). In awarding exemplary damage, the jury may consider a number of factors:

(1) the nature of the wrong;

(2) the frequency of the wrongs committed;

(3) the character of the conduct involved;

(4) the degree of the wrongdoer's culpability;

(5) the situation and sensibilities of the parties involved;

(6) the extent to which such conduct offends a sense of public justice and propriety, and

(7) the amount needed to deter similar acts in the future.

*Alamo Nat'l Bank v. Kraus,* 616 S.W.2d 908, 910 (Tex.1981); *Acme,* 862 S.W.2d at 810; *Goswami v. Thetford,* 829 S.W.2d 317, 321 (Tex.App.—El Paso 1992, writ denied); *Wenco of El Paso/Las Cruces, Inc. v. Nazario,* 783 S.W.2d 663, 667 (Tex.App.—El Paso 1989, no writ). The record in the instant case, as described above, contains ample evidence from which the jury could have based its award of exemplary damages, given the factors shown above. Moreover, we note that in the award of exemplary damages, there is no set ratio between the actual and exemplary damages which is considered reasonable, each case having to dangerously stand on its own. *Acme,* 862 S.W.2d at 810. Unless the award is so large as to indicate it was the result of passion or prejudice, we will not set it aside. *Id.*

In the case before us, the actual damages awarded by the jury amounted to $46,600 and the exemplary damages were $5,000. We find the ratio between the actual and exemplary damages to be well within limits previously approved by this Court. *See State Farm Mut. Auto. Ins. Co. v. Zubiate,* 808 S.W.2d 590, 605 (Tex.App.—El Paso 1991, writ denied); *Investment Properties Management v. Montes,* 821 S.W.2d 691, 697 (Tex.App.—El Paso 1991, no writ); *Wal–Mart Stores v. Kee,* 743 S.W.2d 296, 299 (Tex.App.—Tyler 1987, no writ). Under the criterion set forth above, we do not find the award of exemplary damages in this case to be excessive and considering all the evidence in the case, we conclude that the jury's award for exemplary damages was not so against the great weight and preponderance of the evidence as to be manifestly unjust. Accordingly, Points of Error Nos. Seventeen, Eighteen, Nineteen, and Twenty are overruled in their entirety.

### D. Points of Error Nos. Six through Nine and Eleven through Fourteen

In Points of Error Nos. Six, Seven, Eight, and Nine, Appellant asserts that the trial court erred in denying her motion for judgment n.o.v. and/or motion for new trial in that there was no evidence or, alternatively, insufficient evidence to support the jury's answer to Question No. 2a awarding Salazar past mental anguish damages; the trial court erred in denying her motion for new trial in that the jury's answer to Question No. 2a was against the great weight and preponderance of the evidence; trial court erred in denying her motion for judgment n.o.v. in that the absence of past mental anguish damages was established as a matter of law; and the jury's award of past mental anguish damages in answer to Question No. 2a was manifestly too large. Points of Error Nos. Eleven, Twelve, Thirteen, and Fourteen allege the identical errors with respect to the jury's answer to Question No. 2c regarding past loss income.

Jury Question No. 2 asks what sum of money paid now in cash, would fairly and reasonably compensate Salazar for her injuries. Three categories were presented: Past Mental Anguish, Future Mental Anguish, Past Loss of Income. The jury awarded the sum of $15,000 for past mental anguish, $0 for future mental anguish, and $31,600 for past loss of income.

Salazar testified that the instant after being accused of theft, her heart starting

pounding, she was unable to breath, she was shaking, and she felt sick to her stomach. She also had a vision of being arrested, handcuffed, and led into the county jail. She had visions of being exposed to the media, both electronic and print, and, as a result, she became upset. Salazar also feared that if she was arrested, that she hoped that it would happen before school started because she did not want to be arrested in front of her young students. She also feared being extradited to Nevada, having to post bond and hiring a criminal attorney because she did not have enough money for that. Because of this fear she started saving money. Salazar testified that she was a well respected teacher, she was liked and trusted by everyone she came in contact with. After Salazar was accused of theft, her behavior changed. She became fearful of leaving the house; she would look before she would leave the house to see if a police car was pulling up; if she saw car lights at night through the curtains she thought that the police was coming to arrest her; and she quit babysitting her grandchildren because she did not want to be arrested in front of them. She also testified that after Appellant's allegations were made, she started having physical ailments like severe headaches, stomach problems, and an elevation in her blood pressure which required medication.[3] The jury awarded $15,000 for past mental anguish and $0 for future anguish, and in the jury's discretion, this amount was fair and reasonable compensation for Appellee in light of the facts presented to them.

The record further shows that Salazar also testified that she changed jobs from the Socorro Independent School District to the Clint School District and then at the end of that year left El Paso altogether because if she were to be arrested, she wanted it to be in a location where she is not as well known

as she was in El Paso. Salazar worked in the Socorro District from 1987 through 1992 and worked at the Clint District from 1992–1993. While in El Paso at the Clint district, Salazar made $32,600 plus a $4,000 stipend for the career ladder and if she would not have left El Paso she would have been making $38,000. When she left El Paso she moved to Brownwood, Texas but could not obtain a teaching job there. For over a year, she worked as an assistant manager at a convenience store where she made a little over $9,000 for her annual salary.

The jury heard the above testimony in regard to Salazar's lost income and mental anguish. We find that the amount awarded for past mental anguish and past loss of income was not excessive and overrule Appellant's Points of Error Nos. Six through Nine and Eleven through Fourteen.

### E. Point of Error No. Ten

In Point of Error No. Ten, Appellant maintains that the trial court abused its discretion in allowing the plaintiff below to make a trial amendment because there was no evidence or, alternatively, insufficient evidence, to support a pleading amendment alleging past lost income and at no time before trial had the plaintiff pleaded or prayed for such damages. We disagree.

It is well established that a party may amend his pleadings during the course of a trial. *Greenhalgh v. Service Lloyds Ins. Co.*, 787 S.W.2d 938, 940 (Tex.1990); *Zavala v. Trujillo*, 883 S.W.2d 242, 245 (Tex.App.—El Paso 1994, writ denied). Rule 63 states in part:

Parties may amend their pleadings, ... as they may desire by filing such pleas with the clerk at such time as not to operate as a surprise to the opposite party; provided, that any pleadings, responses or

---

**3.** In *Saenz v. Fidelity & Guaranty Ins. Underwriters*, 925 S.W.2d 607 (Tex.1996), the Supreme Court stated that before mental anguish damages may be awarded, the evidence presented must show "more than mere worry, anxiety, vexation, embarrassment, or anger" and that appellate courts must conduct a "meaningful evidentiary review." *Id.* at 614. The Court found that there must be some evidence to justify the specific amount awarded and evidence of the existence of

compensable mental anguish. *Id.* Compensation can only be for mental anguish that causes "substantial disruption in ... daily routine" or "a high degree of mental pain and distress." *Id.* citing *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex.1995). After reviewing the record, this Court finds that there was sufficient evidence presented to the jury. Appellee's life has been disrupted as shown by the facts presented.

pleas offered for filing within seven days of the date of trial or thereafter, ... shall be filed only after leave of the judge is obtained, which leave shall be granted by the judge unless there is a showing that such filing will operate as a surprise to the opposite party.

Tex.R.Civ.P. 63.

Rule 66 further provides:

If evidence is objected to at the trial on the ground that it is not within the issues made by the pleading, or if during the trial any defect, fault or omission in a pleading, either of form or substance, is called to the attention of the court, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the allowance of such amendment would prejudice him in maintaining his action or defense upon the merits. The court may grant a postponement to enable the objecting party to meet such evidence.

Tex.R.Civ.P. 66.

The filing of a trial amendment is within the sound discretion of the trial court. *Zavala*, 883 S.W.2d at 245; *Concha v. Concha*, 808 S.W.2d 230, 231 (Tex.App.—El Paso 1991, no writ). A trial court however, has no discretion to refuse a trial amendment under Rules 63 and 66 unless:

(1) the party opposing the amendment presents evidence of surprise or prejudice; or

(2) the trial amendment asserts a new cause of action or defense, and thus is prejudicial on its face, and the opposing party objects to the amendment.

*Zavala*, 883 S.W.2d at 245; *Concha*, 808 S.W.2d at 231. The burden of establishing surprise or prejudice at the trial court clearly rests on the party opposing the trial amendment. *Id.* Thus, the trial court's decision to allow or deny a trial amendment may be reversed only if it is a clear abuse of discretion. *Hardin v. Hardin*, 597 S.W.2d 347, 349–50 (Tex.1980). As stated above, the test for abuse of discretion is not whether, in the opinion of this Court, the facts present an

appropriate case for the trial court's actions. Rather, it is a question of whether the court acted without reference to any guiding rules and principles. *Zavala*, 883 S.W.2d at 245.

Given the above, we find that the trial court did not err in allowing the complained-of trial amendment. Not only do the guiding principles of Rules 63 and 66 permit such an amendment, but Rule 67 and the evidence presented to the trial court in the instant case would further support such an amendment. Rule 67, entitled *Amendments to Conform to Issues Tried Without Objection*, states:

When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. In such case such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made by leave of court upon motion of any party at any time up to the submission of the case to the Court or jury, but failure so to amend shall not affect the result of the trial of these issues; provided that written pleadings, before the time of submission, shall be necessary to the submission of special issues, as is provided in Rules 277 and 279.

Tex.R.Civ.P. 67.

The evidence presented to the trial court established loss of income suffered by Salazar as a result of having to change employment. During the entire trial, Appellant's counsel did not object to evidence being offered to establish Salazar's loss of past income, and therefore, the trial court did not err in allowing Appellee to amend her pleadings to conform with the evidence presented to the jury. Accordingly, Appellant's Point of Error No. Ten is overruled.

### F. Point of Error No. One

Point of Error No. One states that the trial court abused its discretion in admitting into evidence and allowing the jury to consider audio recordings.

The Texas Supreme Court has adopted a seven-prong approach to the admissibility of audio recordings. In order for

a tape recording to be admissible, the offeror must show or establish:

(1) that the recording device was capable of taking testimony;

(2) that the operator of the device was competent;

(3) the authenticity of the correctness of the recording;

(4) that changes, additions, or deletions have not been made;

(5) the manner of the preservation of the recording;

(6) the identification of the speakers; and

(7) that the testimony elicited was voluntarily made without any kind of inducement.

*Seymour v. Gillespie,* 608 S.W.2d 897, 898 (Tex.1980); *Thoma, In re,* 873 S.W.2d 477, 486–87 (Tex.Rev.Trib.1994); *Interest of T.L.H.,* 630 S.W.2d 441, 447 (Tex.Civ.App.—Corpus Christi 1982, writ dism'd w.o.j.). The trial court may infer some of the above elements, and therefore, the proponent need not establish each of them in detail. *Seymour v. Gillespie,* 608 S.W.2d at 897. When a proper predicate is laid and there are no fundamental problems, the trial court can, in its discretion, admit tape recordings into evidence. *See In re Bates,* 555 S.W.2d 420, 423 (Tex. 1977); *Drake v. State,* 488 S.W.2d 534, 538 (Tex.Civ.App.—Dallas 1972, writ ref'd n.r.e.).

■ The record in the instant case shows that the trial court allowed the introduction of a telephone tape recording which took place between Salazar and Leane Coon. Appellant objected to the admission of this telephone recording, citing the above seven-prong test. Salazar testified regarding the telephone recording, satisfying the trial court that all seven prongs had been met. The trial court concluded that any defects in the telephone tape recording went to the weight of the evidence rather than to its admissibility.[4]

Given the above, we find that there was sufficient evidence presented to the trial court regarding the admissibility of the telephone tape recording, and as a result, the trial court did not abuse its discretion in admitting such tape into evidence. Appellant's Point of Error No. One is overruled.

Having overruled each of Appellant's Points of Error, we affirm the judgment of the trial court.

---

4. The record in the instant case reflects that on voir dire, Salazar testified as to the requisite elements for admissibility of the telephone tape recording. Salazar stated that she was familiar with the tape, made the tape in her home, did not make any changes or alter the tape, that she offered the complete tape, she did not offer any of the parties speaking any sort of inducement, she identified the speakers of the tape, she used a special recorder and that it was capable of recording a conversation, she was competent to recorder because she had practiced beforehand, that the tape was an original and not a duplicate, and that she took the tape directly from the recording machine and placed it into an envelope and brought it to her attorney. After hearing this testimony on voir dire, the trial court found that the tape had been properly authenticated.