Criminal Case Template













COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS




RON MORGAN D/B/A RON
MORGAN INTERIORS, SALON RED,
AND LOS ARBOLES TO THE
TRADE,


 Appellant,


v.


JOHN MICHAEL VERLANDER AND
SHARON VERLANDER,


 Appellees.

§


§


§


§


§


No. 08-00-00556-CV


Appeal from the


210th Judicial District Court


of El Paso County, Texas


(TC# 98-3783)


M E M O R A N D U M O P I N I O N


 This is an appeal from a fraud, DTPA, and breach of contract action. For the reasons
stated, we affirm the judgment of the trial court.

I. SUMMARY OF THE EVIDENCE


 Appellees, John Michael Verlander and Sharon Verlander, hired Appellant, Ron
Morgan d/b/a Ron Morgan Interiors, Salon Red, and Los Arboles to the Trade, as the interior
designer on their home remodeling project. The Verlanders had already hired a contractor,
Emilio Allen, to remodel and agreed that Appellant's fee would be ten percent (10%) of
Allen's fee, or $30,000.00. Mrs. Verlander also offered to supplement the flat fee by
offering Appellant the window treatment job. They agreed that Appellant would give them
a forty percent (40%) discount over what they would pay elsewhere for the window
treatments. Mrs. Verlander and Appellant also agreed they would make two trips to Dallas
to shop for furniture and accessories, and Appellant told her that she could have everything
at his "designer's cost." 

 After construction began Mrs. Verlander and Appellant took their first trip to Dallas
in late January or early February 1998, to look for furnishings. Mrs. Verlander paid for the
trip expenses. Appellant took pictures of numerous items that were being considered,
including a brown sofa and a blue light fixture. Mrs. Verlander testified that she did not look
at price tags during this trip because Appellant told her it was "picture day" only. When they
returned to El Paso, Appellant made a board with pictures on it of the selections he liked.
Mrs. Verlander testified that she questioned some of his choices, but because she trusted him,
she ultimately left the decisions to Appellant. Appellant ordered the furniture in February
and charged the Verlander's credit cards under his businesses, Salon Red and Los Arboles
to the Trade. 

 The furniture began arriving shortly thereafter. The brown couch that Mrs. Verlander
liked arrived in a shiny gold material. Mrs. Verlander immediately called Appellant to
complain about the couch. He told her that the gold patina was the most expensive fabric
available and she was not charged extra for it. Mrs. Verlander told Appellant that she did not
like gold and it was not her taste. He said he would see what he could do about it. The sofa
remains in the Verlander's house today. 

 There were also problems with the kitchen floor. Mrs. Verlander chose a reddish
color brick for the kitchen floor, but Appellant recommended an orange-colored brick. He
told her it would look better. When the floor was put down, the orange color "absolutely
glowed in the dark" and was "ugly." Mrs. Verlander called Appellant to come over and look
at it. He told her not to "sweat the small stuff." The floor had to be jack hammered up,
causing a huge mess and damages of $4,500. Appellant offered to pay half, but never did.

 When the Verlanders returned from a trip, they found the remodeling had been
completed by Allen and that Appellant had stocked the house with accessories. The house
was cleaned, the furniture was in place, the floor was shined, and the house looked "very
nice." Appellant told Mrs. Verlander to walk through and decide what she wanted to keep
and what she wanted to send back. He told her she would get full credit on anything she did
not like. Mrs. Verlander was upset about the removal of personal items from the house. 
Appellant assured her that he had the items and that they were being cleaned and refurbished. 
He promised to return them, but the items were never returned to the Verlanders. Mrs.
Verlander estimates that she paid $4,050 for the unreturned personal items. Appellant even
billed them for a vase he had removed. 

 Appellant then sent the Verlanders an invoice for $77,000 for the accessories. Mrs.
Verlander sent back several items right away that totaled approximately $20,000. There were
still $50,000 worth of accessories that Mrs. Verlander did not choose, but she testified that
she "felt obligated to keep something" since Appellant had gone to the trouble of decorating. 
Appellant began calling and asking for payment on the accessories. The Verlanders told him
to charge it to the same credit cards with the understanding that they could return anything
they did not like for a credit. 

 The Verlanders became suspicious about the discount they had been promised after
Mrs. Verlander began noticing similar merchandise in local stores with retail prices the same
or less than she had paid. She located a bar code on an end table in the living room that
indicated the table was purchased from Homestead House. When she questioned Appellant
about it, he explained that it was possible that Design Directions in Dallas purchased the
table from Homestead House, since Homestead House sometimes overstocked items. Mrs.
Verlander also found a tag inside the drawer of a table in her daughter's room that indicated
it was purchased at Ethan Allen. The Verlanders then requested invoices for all of the
accessories that Appellant had purchased. After questioning why they would want them,
Appellant finally stated that he would give them the invoices. 

 The first set of invoices Appellant provided were photocopies of Appellant's
invoicing forms. Many of the items, descriptions, and prices had been handwritten over in
felt pen. Mrs. Verlander went to Dallas to investigate the prices of the furniture. She
discovered that a sofa Appellant claimed had a retail value of $7,035, and had sold to them
at a discount of $6,800, actually cost him only $3,600. Another sofa that actually cost $2,150
was billed to the Verlanders twice at a cost of $4,150 each time. Mr. Verlander was unable
to confirm if they were receiving credit for the items returned, so they asked Appellant to
provide original invoices from the sellers for each of the items he purchased. 

 Unsatisfied with the invoices Appellant provided, the Verlanders had their attorney
send a demand letter asking for an accounting. Appellant provided a burgundy-colored 
notebook with numerous checks and invoices that did not correspond with any of the items
in the Verlander's home. The Verlanders then filed suit seeking an accounting from
Appellant.

 During the discovery process, the Verlanders served notices of deposition on written
questions to the various suppliers from whom Appellant said he purchased the furnishings.
Appellant had billed the Verlanders for several pieces of furniture from "Design Directions"
in Dallas, but the Verlanders had reason to believe that the furniture actually came from
Ethan Allen in El Paso. Appellant had given them an invoice out of his file from Design
Directions prior to suit being filed. He had hand numbered the documents and the one from
Design Directions was numbered as document 138. When the Verlanders subpoenaed the
Design Directions documents after suit was filed, they received the same invoice reflecting
Appellant's handwritten number 138 in the bottom right hand corner.

 The Verlanders also subpoenaed the records for CBI and deposed one of its
salespersons. CBI has a showroom in the Dallas World Trade Center and sold one of the
sofas to the Verlanders through Appellant. Appellant billed the Verlanders $7,050 for a sofa
and told them the manufacturer's suggested retail price was $13,950. However, CBI's
records showed the actual retail price was $7,325 and with Appellant's discount, he paid only
$3,955. Jeff Tyra, CBI's manager, responded to the subpoena for CBI's records. He stated
that Appellant had given him a typed statement with objections on it to assist CBI in resisting
the subpoena. Appellant also gave Tyra a sales invoice for the sofa. Tyra recognized that
the invoice was not the correct sales invoice because the fictitious invoice overstated the
price Appellant paid for the sofa. When asked if Appellant was attempting to get him to
produce a false record, Tyra responded, "I guess I would have to say yes." After realizing
that Appellant was attempting to fabricate evidence, the Verlanders filed a motion for
sanctions. The trial court held a hearing and requested further briefing. Appellant filed a
response in which he argued that only one altered document was at issue and that there was
insufficient proof that he attempted to tamper with CBI's deposition. The trial court entered
an order which found that Appellant "intentionally manufactured and fabricated false
evidence and thereafter attempted to tamper with" CBI business records which were under
subpoena. The order struck Appellant's answer. The trial court later allowed Appellant to
file an amended answer, but eventually struck it too, commenting that "after . . . hearing the
full trial, I'm more convinced than ever that my ruling was correct in the first instance." 

 The damages portion alone was tried to the jury. The jury awarded Appellees' a total
of $1,306,261.06, which was comprised of $207,307 in actual damages, $1,000,000 in
exemplary damages, $62,250 in attorneys' fees, and $36,704.06 in prejudgment interest. 
This appeal follows.

II. DISCUSSION


 Appellant presents nine issues on appeal. We begin with a discussion of the legal
sufficiency standard of review and address Issues No. Seven, Eight and Nine. We then
discuss the abuse of discretion standard of review and address Issues No. One through Six.

A. Legal Sufficiency Standard of Review

 In Issues No. Seven, Eight and Nine Appellant claims that there is no evidence to
support the jury's answers to questions regarding actual, consequential and punitive damages.
 A "no evidence" point is a question of law which challenges the legal sufficiency of
the evidence to support a particular fact finding. There are basically two separate "no
evidence" claims. When the party having the burden of proof suffers an unfavorable finding,
the point of error challenging the legal sufficiency of the evidence should be that the fact or
issue was established "as a matter of law." When, as here, the party without the burden of
proof suffers an unfavorable finding, the challenge on appeal is one of "no evidence to
support the finding." See Creative Manufacturing, Inc. v. Unik, 726 S.W.2d 207 (Tex. App.--Fort Worth 1987, writ ref'd n.r.e.). The standard of review requires a determination by the
appellate court as to whether, considering only the evidence and inferences that support a
factual finding in favor of the party having the burden of proof, in a light most favorable to
such findings, and disregarding all evidence and inferences to the contrary, there is any
probative evidence which supports the finding. Garza v. Alviar, 395 S.W.2d 821, 823 (Tex.
1965); Southwest Craft Center v. Heilner, 670 S.W.2d 651 (Tex. App.--San Antonio 1984,
writ ref'd n.r.e.); Terminix v. Lucci, 670 S.W.2d 657 (Tex. App.--San Antonio 1984, writ
ref'd n.r.e.); Dayton Hudson Corp. v. Altus, 715 S.W.2d 670 (Tex. App.--Houston [1st Dist.]
1986, writ ref'd n.r.e.). If more than a scintilla of evidence supports the finding, the "no
evidence" point fails. Tseo v. Midland Am. Bank, 893 S.W.2d 23, 25 (Tex. App.--El Paso,
1994, writ denied); Hallmark v. Hand, 885 S.W.2d 471, 474 (Tex. App.--El Paso 1994, writ
denied).

 In Issue No. Seven, Appellant argues that the evidence does not support the jury's
answers to questions regarding actual damages. At issue are Questions 1, 2a, 5a and 6. 
Questions 1, 2a and 5a read in relevant part as follows:

The difference, if any, in the value of the services and furnishings received
and the price Mr. and Mrs. Verlander paid for them. The difference, if any,
shall be determined at the time and place the services and furnishings were
provided. 


In response to each question, the jury answered $179,945. Plaintiff's Exhibit Number 144
provides a detailed explanation of the Verlanders' estimated expenses in the amount of $179,
945. This explanation is supported by copies of invoices and checks submitted by the
Verlanders. Accordingly, we find that the jury's award is supported by more than a scintilla
of evidence and this portion of Issue No. Seven is overruled. 

 Question 6 states in pertinent part:

The difference, if any, between the value of the services and furnishings
received by Mr. and Mrs. Verlander and the purchase price or value given. 
The pecuniary loss, if any, otherwise suffered as a consequence of Mr. and 

Mrs. Verlander's reliance on the misrepresentation. 




In response to question 6, the jury answered $77,852. Plaintiff's Exhibit 144 also provides
a detailed support for the jury's answer. Thus, we find that the jury's award is supported by
more than a scintilla of evidence and, we overrule Issue No. Seven in its entirety.

 In Issue No. Eight, Appellant argues that the evidence does not support the jury's
answers to questions regarding consequential damages. Appellant references the jury's
answers to Questions 2b, 2c, 2d, 5b, 5c and 5d. Questions 2b and 5b read as follows:

The reasonable value of the time spent by Mr. and Mrs. Verlander
correcting or attempting to correct the problems caused by Ron Morgan. 


In response to questions 2b and 5b, the jury answered $5,000. Mrs. Verlander testified that
she spent approximately one hundred (100) hours attempting to figure out how much her
family had been overcharged by Appellant. Mr. Verlander testified that he spent "a couple
of hundred hours" attempting to correct Appellant's overcharges. This is more than a
scintilla of evidence to support the jury's answer. Accordingly, this portion of Issue No.
Eight is overruled.

 Questions 2c and 5c read as follows:

 

The reasonable and necessary out-of-pocket expense incurred by Mr. and
Mrs. Verlander to identify discrepancies in Ron Morgan's billings. 


In response to questions 2c and 5c, the jury answered $12,359. The Verlanders arrived at
$12,359 by adding the cost of depositions, other charges, firm expenses and accountant fees. 
The Verlanders also provided documentation of the charges. Plaintiffs' exhibit Number 125
documents accounting fees. Plaintiffs' exhibit 88 documents attorney's fees. Deposition
costs are documented in Plaintiffs' Exhibits 123 and 124. Upon reviewing only that evidence
that tends to support the jury's findings, we find more than a scintilla of evidence to support
the jury's answer. Thus, we overrule Issue No. Eight in its entirety.

 In Issue No. Nine, Appellant argues that the evidence does not support the jury's
answers to questions regarding punitive damages. Appellant asserts that there is no evidence
that his conduct or omissions were knowing or intentional. We disagree and find legally
sufficient evidence to support the jury's answer. Appellant's employee acknowledged the
altered documents. Furthermore, Appellant supplied Tyra with an invasion of privacy
objection to the subpoena's inquiry regarding pricing information along with a fabricated
sales order that overstated the price Appellant paid for merchandise. In addition, when
Appellant eventually provided the Verlanders with invoices, they were disorganized, changed
and marked over. Mrs. Verlander testified that furniture Appellant told her had been
purchased in Dallas contained markings of local furniture suppliers. Mrs. Verlander also
testified that she noticed similar merchandise in local stores with retail prices the same or less
than she had paid. In viewing only that evidence that supports the jury's findings, we find

more than a scintilla of evidence to support the jury's answer. Accordingly, Issue No. Nine
is overruled.

B. Abuse of Discretion Standard of Review

 "A [party] who attacks the ruling of a trial court as an abuse of discretion labors under
a heavy burden." Johnson v. Fourth Court of Appeals, 700 S.W.2d 916, 917 (Tex. 1985)
(orig. proceeding). The test for abuse of discretion is not whether, in the opinion of this
Court, the facts present an appropriate case for the trial court's actions. Rather, it is a
question of whether the court acted without reference to any guiding rules and principles. 
Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985), cert. denied,
476 U.S. 1159 (1986); Amador v. Tan, 855 S.W.2d 131, 133 (Tex. App.--El Paso 1993, writ
denied). Another way of stating the test is whether the act was arbitrary or unreasonable. 
Downer, 701 S.W.2d at 242 (citing Smithson v. Cessna Aircraft Co., 665 S.W.2d 439, 443
(Tex. 1984)); Amador, 855 S.W.2d at 133. The mere fact that a trial court may decide a
matter within its discretionary authority in a different manner than an appellate judge in a
similar circumstance does not demonstrate that an abuse of discretion has occurred. Downer,
701 S.W.2d at 242 (citing Southwestern Bell Telephone Co. v. Johnson, 389 S.W.2d 645, 648
(Tex. 1965)). A mere error of judgment is not an abuse of discretion. Loftin v. Martin, 776
S.W.2d 145, 146 (Tex. 1989).

 In Issue No. One, Appellant contends the trial court erred in entering its sanction order
of May 5, 2000. Sanctions are generally reviewed under an abuse of discretion standard. 
American Transitional Care Ctrs. of Tex., Inc., v. Palacios, 46 S.W.3d 873, 877 (Tex. 2001);
Walton v. City of Midland, 24 S.W.3d 853 (Tex. App.--El Paso 2000, pet. denied). The Court
of Appeals will determine whether the trial court abused its discretion in awarding sanctions
by reviewing the record in the light most favorable to the trial court's action. Spellmon v.
Collins, 970 S.W.2d 578, 580 (Tex. App.--Houston [14th Dist.] 1998, no pet.). 

 The trial court has authority to impose discovery sanctions that inter alia strike out
pleadings or parts thereof or render a default judgment against the disobedient party. Tex.
R. Civ. P. 215(2)(b)(5) (Vernon 2003). To determine whether the sanctions imposed by the
trial court are just, we apply a two factor test. Trans American Natural Gas v. Powell, 811
S.W.2d 913, 917 (Tex. 1991). First, we determine whether there is a direct relationship
between the offensive conduct and the sanctions. Id. Second, we determine whether the
sanctions are excessive. Id. 

 First, we examine whether there is a direct relationship between Appellant's conduct
and the sanctions. Appellant supplied Tyra with an invasion of privacy objection to the
subpoena's inquiry regarding pricing information along with a fabricated sales order. The
trial court struck Appellant's pleadings in their entirety and entered a partial summary
judgment against him. The trial court found that Appellant's conduct:

cast doubt as to the veracity of [his] accounting of his relationship with
[Appellees] to such a degree that [Appellees] are impairedin presenting in
court an accurate portrayal of said relationship and the actual dollar amount
of damages sustained as a consequence of [Appellant's] overcharging. 


Thus, the trial court imposed sanctions that were directly related to Appellant's conduct.

 Next, we consider whether the sanctions imposed were excessive. In making this
determination we keep in mind that sanctions should not be imposed to adjudicate the merits
of the case unless the party's actions justify a presumption that the case lacks merit. Trans
American Natural Gas, 811 S.W.2d at 918 (emphasis added). We find Appellant's action
in this case justify such a presumption. Fabricating evidence strongly suggests that a party
has no legitimate evidence to support its claim. Daniel v. Kelley Oil Corp., 981 S.W.2d 230,
235 (Tex. App.--Houston [1st Dist.] 1998, pet. denied). Appellant provided CBI manager
Tyra with a fabricated sales receipt and a prepared statement of objections to a subpoena
requesting pricing information. Appellant's actions go to the core elements of the case by
depriving the Verlanders of the ability to determine how much they were overcharged under
the terms of their contract with Appellant. After considering all sanctions available to it, the
trial court determined that Appellant's discovery abuse "can be remedied only by an order
striking [his] pleadings in their entirety and entering a partial default judgment against
[him]." The trial court did not abuse its discretion. Accordingly, Issue No. One is overruled.

 In Issue No. Two Appellant contends the trial court erred in overruling all of his
efforts to assert that the case should not proceed because he had no legal duty for an
accounting. An accounting is warranted among parties who have a contractual or fiduciary
relationship. T.F.W. Management, Inc. v. Westwood Shores Property Owners Ass'n, 79
S.W.3d 712, 717 (Tex. App.--Houston [14th Dist.] 2002). Appellant asserts that he did not
have a contract with the Verlanders. Appellant argues that, "nothing was ever signed." 
However, in a suit for contract, whether written or oral, the basic elements of a binding
contract remain the same: (1) offer; (2) acceptance in strict compliance with terms of offer;
(3) meeting of the minds; (4) communication that each party has consented to terms of the
agreement; and (5) execution and delivery of the contract with intent that it become mutual
and binding on both parties. See Dallas Bldg. & Repair v. Butler, 589 S.W.2d 794, 795 (Tex.
Civ. App.--Dallas 1979, writ denied); McCulley Fine Arts Gallery v. X Partners, 860 S.W.2d
473, 477 (Tex. App.--El Paso 1993, no pet.). Mrs. Verlander testified as to the negotiation
and acceptance of her contract with Appellant for his design services. The Verlanders also
provided the trial court with a statement written and signed by Appellant which stated in
relevant part:

All furniture and accessories are billed at my actual cost. There is no mark-up as agreed . . . All freight is billed with no handling fees. There are no
fees for using your credit cards. We are absorbing 3% to 3½% on these
transactions. All items purchased can be returned for merchandise credit or
exchange at any time. Any item you find at a lower price will be reduced
and or given to you at no charge. 

Thus, although nothing was signed by both the Verlanders and Appellant, the trial court did
not act without regard to any rules or principles in determining that an accounting was
warranted. Accordingly, Issue No. Two is overruled.

 In Issue No. Three, Appellant argues that the trial court erred in granting the
Verlanders' leave to amend their pleadings at the time of trial. The filing of a trial
amendment is within the sound discretion of the trial court. Campbell v. Salazar, 960
S.W.2d 719, 731 (Tex. App.--El Paso 1997, pet. denied). It is well-established that a party
may amend their pleadings during the course of trial, so long as the trial court does not find
that the amendment is calculated to surprise the opposing party or reshape the cause of
action, prejudicing opposing party and unnecessarily delaying trial. Id. at 730; Tex. R. Civ.
P. 63. The party opposing the trial amendment bears the burden of proving surprise or
prejudice at the trial court. Campbell, 960 S.W.2d at 731. Appellant has failed to provide
this Court with evidence proving surprise or prejudice.

 The Verlanders amended their pleading claiming fraud, deceptive trade practices,
negligent misrepresentation and breach of warranty after the evidence presented at trial
revealed the nature of Appellant's conduct. The Verlanders also amended their pleading to
include exemplary damages. Ultimately, the trial court's ruling on a request to amend
pleadings is reversible only by showing an abuse of discretion. Cocke v. White, 697 S.W.2d
739 (Tex. App.--Corpus Christi 1985, writ ref'd n.r.e.); Tex. R. Civ. P. 66. We find that the
trial court did not abuse its discretion in granting the Verlanders' leave to amend their
pleadings. Accordingly, Issue No. Three is overruled. 

 In Issues No. Four, Five and Six, Appellant claims that the trial court erred in its
charge regarding actual damages, spoilation and punitive damages. The trial court has
considerable discretion in deciding what instructions are necessary and proper to submit to
jurors, and appellate courts will review charge complaint on abuse-of-discretion standard. 
Castillo v. U.S. Fire Ins. Co., 953 S.W.2d 470, 477 (Tex. App.--El Paso 1997, no pet.). The
trial court's decision should not be overturned unless the charge amounted to such a denial
of the complaining party's rights as was reasonably calculated and probably did cause an
improper judgment. De Leon v. Furr's Supermarkets, Inc., 31 S.W.3d 297, 300 (Tex. App.--El Paso 2000, no pet.). 

 Appellant's complaint regarding actual damages stems from the inclusion of the word
"services" in Questions 1, 2, 5, and 6 which state in relevant part:

The difference, if any, in the value of the services and furnishings received
and the price Mr. and Mrs. Verlander paid for them. The difference, if any,
shall be determined at the time and place the services and furnishings were
provided. 


Appellant asserts that the aforementioned damage standard is not supported by the evidence. 
Mrs. Verlander testified that Appellant agreed yet failed to accompany her on two trips to
Dallas, the first trip for furnishings and the second trip for accessories. Mrs. Verlander also
testified that Appellant selected the wrong material for both a sofa and the floor. Thus, we
find sufficient evidence in the record to support the charge. Accordingly, Issue No. Four is
overruled. 

 In Issue No. Five Appellant maintains that the trial court erred in overruling his
objection regarding the jury charge involving spoilation which states in relevant part: 

You are instructed that the failure to produce evidence within a party's
control and/or falsification or alteration of evidence raises a presumption
that if the true evidence were produced it would operate against him. 

Appellant argues that the aforementioned instruction is an abstract statement of the law that
is unsupported by the evidence. However, fabricating evidence strongly suggests that a party
has no legitimate evidence to support its claim. Daniel, 981 S.W.2d at 235. The record
reveals evidence of Appellant's fabrication of evidence. When the Verlanders requested
invoices for all accessories that Appellant had purchased, Appellant questioned why they
would want them. When Appellant eventually supplied the invoices, they were disorganized,
changed and marked over in such a manner that Mr. Verlander testified that "you had to be
a detective to go through and find out was going on." In addition, Appellant supplied Tyra
with an invasion of privacy objection to the subpoena's inquiry regarding pricing information
along with a fabricated sales order. Accordingly, Issue No. Five is overruled. 

 In Issue No. Six Appellant asserts that the trial court erred in its charge to the jury by
asking them to answer questions regarding punitive damages three times and by failing to
have certain predicate findings required by the DTPA. Appellant argues that the charge
constitutes an impermissible comment on the weight of the evidence. An impermissible
comment on the weight of the evidence occurs when, after examining the entire charge, it is
determined that the judge assumed the truth of a material controverted fact or exaggerated,
minimized or withdrew pertinent evidence from the jury's consideration. Redwine v. AAA
Life Ins. Co., 852 S.W.2d 10, 14 (Tex. App.--Dallas 1993, no writ). Jury charge error is
reversible only if, when viewed in light of totality of circumstances, it amounted to such
denial of rights of complaining party as was reasonably calculated and probably did cause
rendition of improper judgment. Howell Crude Oil Co. v. Donna Refinery Partners, Ltd.,
928 S.W.2d 100, 110 (Tex. App.--Houston [14th Dist.] 1996, writ denied). When submitting
the jury charge, the trial court is afforded more discretion when submitting instructions than
when submitting questions. Steak & Ale of Tex., Inc. v. Borneman, 62 S.W.3d 898, 904 (Tex.
App.--Fort Worth 2001, no pet.). The trial judge did not assume or exaggerate Appellant's
fabrication of evidence. Appellant provided the Verlanders with disorganized invoices that
had been changed and marked over. Appellant also provided CBI manager Tyra with a
fabricated sales receipt and a prepared statement of objections to a subpoena requesting
pricing information. In light of the substantial discretion afforded to the trial court and the
evidence demonstrating Appellant's evidence tampering, we overrule Issue No. Six. 

 Having overruled all of Appellant's issues, we affirm the trial court's judgment.

October 16, 2003


 RICHARD BARAJAS, Chief Justice



Before Panel No. 3

Barajas, C.J., Larsen, and Chew, JJ.